# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **VEROS ENERGY, LLC** | ) | **BK No. 15-70470-JHH11** |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| | ) | |
| **VEROS ENERGY, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **AP No. 16-70021-JHH** |
| | ) | |
| **GCUBE INSURANCE SERVICES, INC. and** | ) | |
| **KILN SYNDICATE 510,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

The defendants move to dismiss this adversary proceeding (the "AP") or, alternatively, to transfer venue of the AP (AP Doc. 13) (the "Motion "),[1] relying on a "jurisdiction" clause contained in the certificate of insurance that forms the basis of the alleged causes of action. (*See* AP Doc. 1.) The plaintiff (and debtor in a related chapter 11 bankruptcy case) opposes the Motion (AP Doc. 29) (the "Response")[2] and seeks to enforce two other "jurisdiction" clauses in the certificate.[3] For the reasons set forth herein, the Motion is due to be denied.

## FINDINGS OF FACT AND STIPULATIONS[4]

### A. __The Bankruptcy Filing__

Plaintiff Veros Energy, LLC ("Veros") is a limited liability company organized under the laws of the state of Kansas. (*See* BK[5] Doc. 8; BK Doc. 258 at 4.) Veros previously operated a biodiesel fuel plant (the "Plant") in Moundville, Alabama, its principal place of business. (*See* BK Doc. 60 at 8;

---

[1] *See also* AP Docs. 14, 42, 46, 56, 67, 69 (collectively with the Motion, the "Movants' Venue Filings").

[2] *See also* AP Docs. 43, 47, 57, 68 (collectively with the Response and the Movants' Venue Filings, the "Venue Filings").

[3] Veros makes alternative arguments in support of its preferred forum, namely that the Underwriters (as said term is hereinafter defined) waived the right to challenge venue in this court, that the court has exclusive jurisdiction of the claims in the AP, and that enforcement of the "jurisdiction" clause relied on by the Underwriters would contravene public policy. As the Motion is due to be denied on other grounds, the court need not reach these issues.

[4] Any finding of fact that is more appropriately characterized as a conclusion of law should be construed as such, and vice versa.

[5] "BK" is used in citations in this memorandum opinion to refer to documents filed of record on the docket of Veros's Bankruptcy Case (as said term is hereinafter defined).

BK Doc. 258 at 4.) Veros leased the real property, fixtures, and improvements comprising the Plant from the two Kansas entities that own and manage Veros—Allam Alternative Energy, LLC and Lies Energy, LLC (together, the "Owners"). (*See* BK Doc. 10; BK Doc. 59 at 38; BK Doc. 60 at 6, 11; BK Doc. 60, Ex. SOFA 14; BK Doc. 190, Ex. 1 at 7; BK Doc. 190, Ex. 2 at 3; BK Doc. 258 at 4-5.)

On March 26, 2015, a boiler at the Plant exploded. (*See* BK Doc. 36; BK Doc. 60 at 4; BK Doc. 60, Ex. SOFA 8; AP Doc. 48 at 2.) Following the explosion, Veros ceased production at the Plant. (*See* BK Doc. 12 at 2; BK Doc. 13 at 2; BK Doc. 14 at 2; BK Doc. 60 at 10; BK Doc. 83, *passim*; BK Doc. 190 at 3.) Shortly thereafter (on April 6th) Veros filed a petition for relief under chapter 11 of the Bankruptcy Code[6] with this court (BK Doc. 1) (the "Petition"), commencing case number 15-70470 (the "Bankruptcy Case").

At the time of the explosion, Veros was insured by Lloyd's of London ("Lloyd's") surplus line insurance coverage (the "Insurance") effected through defendant GCube Insurance Services, Inc. ("GCube") on behalf of members of a Lloyd's syndicate (collectively, the "Underwriters"). (*See* BK Doc. 70 at 1-2; BK Doc. 70, Ex. A; BK Doc. 91, *passim*; AP Doc. 1, Ex. 1; AP Doc. 38; AP Doc. 48 at 2.) The certificate of insurance executed by GCube on June 5, 2004 (AP Doc. 1, Ex. 1) (the "Certificate") provided for an initial coverage term of May 22, 2014 to May 21, 2015. (*See* Certificate at 2.) A few weeks after the Petition date, GCube notified Veros that the Insurance would not be renewed as a consequence of Veros's bankruptcy filing. (*See* BK Doc. 70, Ex. B.) The nonrenewal notice purported to cancel the Insurance effective as of May 21, 2015—24 days after the date of the nonrenewal notice. (*See id.*)

On Veros's motion (BK Doc. 70),[7] and after notice and a hearing,[8] the court entered an order determining that the Insurance was effective until at least the 60th day after the date of the nonrenewal notice (as a matter of applicable state law) and that GCube's attempted, earlier cancellation violated the automatic stay imposed by the Bankruptcy Code. (*See* BK Doc. 91.) GCube issued a second, post-Petition, nonrenewal notice that provided for a July 20, 2015 cancellation date, and, on May 27, 2018, Veros wired GCube the sum of $13,566.00 for the unpaid premium due.[9] (BK Doc. 91; BK Doc. 108, Bank Statement at 1; *see also* AP Doc. 48 at 2-3.)

A little less than two months after the Insurance expired, Veros filed a motion to sell substantially all of its assets, which the court granted, in part. (*See* BK Docs. 190, 258, 261, 262.) Simultaneous with Veros's closing of the court-approved sale (the "Sale"), the Owners consummated a sale of the Plant to the purchaser of Veros's assets. (*See* BK Doc. 296.) Several months after the Sale closing, Veros proposed a chapter 11 plan of liquidation (BK Doc. 451) (the "Plan") to administer the remaining assets of its bankruptcy estate (the "Estate"). (*See* Plan, *passim*.)

In the court-approved disclosure statement for the Plan (BK Doc. 450) (the "Disclosure Statement"), Veros disclosed that it had made demand on GCube for payment of property damage and business interruption claims under the Insurance contract and that Veros intended to "assert

---

[6] As used herein "Bankruptcy Code" refers to title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*
[7] *See also* BK Docs. 71, 79.
[8] GCube received notice of the motion and the hearing thereon and did not oppose the motion or appear for the hearing. (*See* BK Doc. 70 at 4; BK Doc. 71 at 2; BK Doc. 75; BK Doc. 77; BK Doc. 79 at 4; BK Doc. 80; BK Doc. 91 at 1.)
[9] The amount reflects the prorated premium due for the additional 60 days of Insurance coverage beyond the original term. (*See* Certificate, *passim*.)

2

contractual liability and potential tort liability . . . should such claims not be paid . . . ." (*See* Disclosure Statement at 11-12.) The Disclosure Statement specified that Veros planned to bring an adversary proceeding before this court if it was unable to settle its Insurance claims. (*See* Disclosure Statement at 11.) The Disclosure Statement estimated the value of the Insurance claims at more than $11.8 million, while explaining to creditors that any recovery thereon was uncertain. (*Id.* at 11-12.)

No creditor or other party in interest objected to confirmation of the Plan, and the court entered an order confirming the Plan with certain modifications agreed to by Veros, the Official Committee of Unsecured Creditors, and the Office of the Bankruptcy Administrator (the "Confirmation Order"). (*See* BK Doc. 494.) GCube received notice of the hearing to consider the Sale, the Disclosure Statement, the hearing to consider approval of the Disclosure Statement, the Plan, the hearing to consider confirmation of the Plan, and the order confirming the Plan. (*See* BK Docs. 197, 397, 416, 455, 495.) To date, GCube has not appeared in the Bankruptcy Case. (*See* BK docket, *passim.*)

## B. The Post-Confirmation Estate

The Plan provides for the Estate to continue in existence post-confirmation, stating: "Given that [Veros's] assets are being liquidated and [Veros] will ultimately be dissolved, assets will not re-vest in a reorganized debtor, and [Veros's] assets will remain in the Estate and not re-vest upon confirmation." (Plan § 6.6.) The Plan further provides: "[a]ny settlement or compromise of claims or sales of Estate assets shall require Court approval pursuant to Bankruptcy Rule 9019"; "[a]ny of [Veros's] rights or cause[s] of action against any party . . . shall remain assets of the . . . Estate"; and "[t]he Court shall retain jurisdiction of this case . . . [t]o enforce all causes of action which may exist on behalf of [Veros]" and "[t]o approve compromises and settlements of any claims or controversies . . . and to oversee the orderly liquidation of the Estate." (*Id.* §§ 6.6, 6.8, 7.6, 7.8.) "Court" is defined in the Plan as "the United States Bankruptcy Court for the Northern District of Alabama, Western Division, presiding over reorganization cases" (i.e., this court) "or if necessary the United States District Court for said district having original jurisdiction over said reorganization cases" (the "District Court"). (*Id.* at § 1.10.)

The Plan is a "self-liquidating" plan in that Veros, which is controlled by the Owners (not a trust or committee), is tasked with liquidating the Estate. (*See* Plan, *passim*; Confirmation Order at 5.) The Plan appoints a post-confirmation committee (comprised of the members of the Official Committee of Unsecured Creditors in the Bankruptcy Case) "to monitor pending contested matters, adversary proceedings, litigation and to help ensure the orderly liquidation of the Estate, as well as to review proposed settlements, assets sales, and to otherwise aid [Veros] in liquidation" (the "Committee"). (*See* Plan § 6.4.)

Other than certain blender's tax credits, which are disputed by the Internal Revenue Service, the Insurance claims are the only known Estate assets that Veros has not liquidated. (*See* Disclosure Statement, *passim*; Plan, *passim*; Post-Confirmation Operating Reports, *passim*;[10] BK Doc. 514; Doc. 610.) To date, holders of (pre-confirmation) allowed priority unsecured claims have been paid in full per the terms of the Plan. (*See* Plan Arts. II-IV; Disclosure Statement at 15-19; BK Doc. 517, Reconcile Session Reports; BK Doc. 524, Bank Reconciliations; BK Doc. 554; BK Doc. 558; BK Doc.

---

[10] Bankruptcy Case documents 517, 524, 535, 547, 567, 571, 577, 586, 589, 590, 602, 603, 604, 606, 607, 608, 613, 614, and 615 are referred to herein as the "Post-Confirmation Operating Reports."

571, Bank Reconciliations; *see also* Post-Confirmation Operating Reports, *passim*.)  Additionally, excepting the Owners, each holder of an allowed nonpriority unsecured claim (each, a "General Unsecured Claim") has been paid fifty percent of the total allowed amount of its General Unsecured Claim (the "50% Distribution").  (*See* Plan Art. IV; Disclosure Statement at 19-28; BK Doc. 524, Bank Reconciliations; BK Doc. 571, Bank Reconciliations; *see also* Post-Confirmation Operating Reports, *passim*.)  The unpaid balance of the (non-Owner) General Unsecured Claims totals less than $1.35 million.  (*See* Disclosure Statement at 19-28; BK Doc. 294; BK Doc. 524, Bank Reconciliations; BK Doc. 554; BK Doc. 558; BK Doc. 571, Bank Reconciliations; *see also* Post-Confirmation Operating Reports, *passim*.)

The Owners hold General Unsecured Claims totaling more than $16 million in the aggregate.  (*See* Disclosure Statement at 27-28; BK Doc. 59 at 19, 26.)  The Plan subordinates the Owners' General Unsecured Claims to the 50% Distribution.  (*See* Plan Art. IV.)  After the 50% Distribution is achieved, the Owners are entitled to share, pro rata, in additional disbursements to holders of General Unsecured Claims under the Plan.  (*See id.*; Disclosure Statement at 8-9, 27-28.)  Based on the size of their General Unsecured Claims, the Owners will receive more than 92% percent of each additional disbursement to holders of General Unsecured Claims.  (*See* Disclosure Statement at 28.)

Veros's bankruptcy counsel and the Committee's counsel are retained on an hourly fee basis.  (*See* BK Doc. 18 at 3, 5; BK Doc. 18, Ex. A at 4; BK Doc. 86 at 4; BK Doc. 104; BK Doc. 147.)  Veros's counsel in the AP is retained on a contingency fee basis.  (*See* BK Doc. 413 at 1-2; *id.* at 413, Ex. A; BK Doc. 478.)  All professional fees paid from the Estate are subject to review and approval by the court under a reasonableness standard.  (*See* BK Docs. 104, 147, 478; *see also* Plan Art. III.)  To date, the court has approved (and the Estate has paid) post-confirmation professional fees and expenses totaling more than $29,500.00.[11]  (*See* BK Docs. 569, 570, 587, 600.)  As of the date of the last Post-Confirmation Operating Report, Veros's remaining cash on hand totaled only $5,882.50.[12]  (BK Doc. 615 at 2.)

## C. The AP

Approximately two months after Plan confirmation, Veros filed the AP, formally alleging its Insurance claims (collectively, the "Claims")[13] against GCube and Kiln Syndicate 510 ("Kiln"), the lead Underwriter.  In lieu of answering, GCube and Kiln, appearing individually and on behalf of the Underwriters,[14] filed the Motion, seeking dismissal of the AP or transfer of the AP to the United States District Court for the Southern District of New York (the "SDNY").  Simultaneously, the Underwriters moved to withdraw the reference of the AP (AP Doc. 15) (the "Motion to Withdraw").  The Motion to Withdraw is pending before the District Court and, as of the date hereof, the District Court has not ruled on the Motion to Withdraw.  (*See* District Court Case No. 7:17-MC-00102-MHH.)

The court declined to stay proceedings on the Venue Filings pending adjudication of the Motion to Withdraw and held a final, evidentiary hearing on the Motion (the "Evidentiary Hearing").

---

[11] The pre-confirmation professional fees and expenses approved on a final basis and paid by the Estate totaled more than $401,000.00.  (*See* BK Docs. 526, 527.)

[12] As of the date of the Evidentiary Hearing, the Estate's cash on hand totaled approximately $22,500 (see BK Docs. 569, 570, 571, 577.)

[13] The Claims sound in contract and tort and relate to both Veros's property damage and business interruption demands.

[14] There is no dispute that (1) GCube and Kiln appeared in both their individual and representative capacities, or (2) all of the Underwriters shall be bound by any judgment entered against GCube or Kiln in the AP.  (*See* AP Doc. 67 at 2.)

4

(*See* AP Doc. 35.)[15]  The court also held non-evidentiary hearings on the Motion, both before and after the Evidentiary Hearing (collectively with the Evidentiary Hearing, the "Hearings").[16]

Pursuant to the scheduling order for the Evidentiary Hearing (AP Doc. 35) (the "Scheduling Order"), the parties filed a joint report to the court concerning the contract evidencing the Insurance (AP Doc. 38) (the "Insurance Report"), as well as a joint stipulation of undisputed facts and conclusions of law for purposes of proceedings on the Motion (AP Doc. 48) (the "Joint Stipulations"). Additional oral stipulations were made on the records of the Hearings (collectively, the "Oral Stipulations," and each an "Oral Stipulation"), and, without objection and pursuant to a further order, the Underwriters filed additional stipulations following the conclusion of the Evidentiary Hearing (the "Undue Prejudice Stipulation"). (*See* AP Docs. 65, 67.)  The parties agreed that the Joint Stipulations and the Oral Stipulations were made for purposes of the Hearings only and shall not be deemed admissions for any reason other than proceedings on the Venue Filings.  (*See* Joint Stipulations at 1; Oral Stipulations.)

The following exhibits were admitted on the record of the Evidentiary Hearing, without objection:  movants' exhibit 1, the court's order regarding GCube's nonrenewal notice (BK Doc. 91); movants' exhibit 2, the Plan; movants' exhibit 3 (and respondent's exhibit 8), the Certificate; movants' exhibit 4, a demonstrative exhibit related to certain legal arguments made by the movants; respondent's exhibit 1, the declaration of B.R. McNaughton (pertaining to the convenience of the parties and witnesses); and all other documents and pleadings of record in the Bankruptcy Case.  No party called a witness to testify at the Evidentiary Hearing.

### D. **The Insurance Contract**

The parties report to the court that the Certificate "is a complete copy of the subject insurance policy, including its declaration page, certificate of insurance, terms and conditions, and all endorsements."  (Insurance Report at 1.)[17]  The parties also stipulate that the Certificate is a GCube/Lloyd's contract and that Veros did not draft the Certificate.  (Oral Stipulation.)  There is no dispute that Veros has paid all Insurance premiums due under the Certificate.  (*See* Joint Stipulations at 3.)

In the Motion the Underwriters seek to enforce a "jurisdiction" clause that appears on page six of the Certificate, under "Project 1" in the subsection titled "Choice Of Law & Jurisdiction."  (*See*

---

[15] *See also* Fed. R. Bankr. P. 5011(c) (2018) ("The filing of a motion for withdrawal of a case or proceeding or for abstention pursuant to 28 U.S.C. § 1334(c) shall not stay the administration of the case or any proceeding therein before the bankruptcy judge except that the bankruptcy judge may stay, on such terms and conditions as are proper, proceedings pending disposition of the motion.").

[16] The clerk's office has docketed the audio recordings of the Hearings in the AP.  (*See* AP Docs. 31-34, 77, 80-83, 95.)

[17] On page two, the Certificate states that the contract is "registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law."  Under the Alabama Surplus Line Insurance Law (Ala. Code §§ 27-10-20 *et seq.*), a broker may issue a certificate to provide evidence of surplus line insurance to the insured.  Ala. Code § 27-10-27 (2018). Upon the insured's request, however, the broker must procure the full policy from the insurer and deliver it to the insured "in replacement of the broker's certificate theretofore issued."  *Id.*  As such, Alabama law contemplates that, although a certificate of insurance may issue, the insurer will issue a separate insurance policy.  The subject document is titled as a "Certificate of Insurance" and is a single document comprised of 29 pages.  (*See* Certificate, *passim.*)  The court does not conclude that the Certificate is a "policy" within the meaning of the Alabama Surplus Line Insurance Law.  Nevertheless, for purposes of proceedings on the Venue Filings, and based on the Insurance Report, the court will treat the Certificate as evidencing all of the terms of the Insurance.

5

Motion, *passim*; Certificate at 6.)   The provision states that "[a]ny disputes between the Insured and Underwriters arising under or in connection with this Insurance policy shall be subject to the exclusive jurisdiction of the courts of the State of New York." (Certificate at 6.)  This clause is referred to herein as the "Jurisdiction Clause."  The parties stipulate that the territory's courts selected by the Jurisdiction Clause are the New York state courts, not the federal courts situated in New York.  (Joint Stipulations at 2.)  The "Choice Of Law & Jurisdiction" section also states that "[t]he proper and exclusive law of this Insurance shall be the laws of the State of New York" (the "Choice of Law Clause").  (Certificate at 6.)

In the Response Veros relies on two other "jurisdiction" provisions in the Certificate.  The first, appears on page eight of the Certificate, under "Certificate Provisions" in the subsection titled "Service of Suit" (the "First Service of Suit Clause"), and reads, in relevant part:

> It is agreed that in the event of the failure of Underwriters to pay any amount claimed to be due hereunder, Underwriters, at the request of the Assured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States.  Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.  It is further agreed that . . . in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

(Certificate at 8.)

The remainder of the First Service of Suit Clause pertains to serving process on the Underwriters and makes provision for statutes, like the Alabama Surplus Line Insurance Law, that require unauthorized insurers to provide notice of the statutory appointment of the chief executive officer of the state's insurance department as the insurers' agent for service of process in actions filed in the state.[18]

The second "jurisdiction" provision cited by Veros appears on page 17 of the Certificate, under the "General Conditions Applicable to All Sections of Coverage Under This Policy" (collectively, the "General Conditions") in the subsection titled "Service of Suit Clause (applicable to USA domiciled Insured's only)" (the "Second Service of Suit Clause," and together with the First Service of Suit Clause, the "Service of Suit Clauses").  The Second Service of Suit Clause is virtually identical to the First Service of Suit Clause, with the only potentially relevant distinction being that the Second Service of Suit Clause refers to the "Insured" not the "Assured."

There is one priority of provision clause in the Certificate (the "Priority of Provision Clause"), appearing in the General Conditions in the subsection titled "Conflict of Wordings." (Certificate, *passim*.)  The Priority of Provision Clause reads: "The conditions contained in the Policy Schedule or in endorsements to the Policy to which this wording is attached shall supersede those of this wording, wherever the same may conflict."  (*Id.* at 14.)

---

[18] *See, e.g.*, Ala. Code § 27-10-33 (2018). Under Alabama law, such a statute pertains to service of process only, not personal jurisdiction.  *See id.*

6

Though GCube is identified in the Certificate as the "Coverholder" and the "Correspondent," and is not listed as an Underwriter in the "Schedule of Underwriters" appearing on page 28 of the Certificate, the parties stipulate that GCube is an Underwriter, as that term is used in the Jurisdiction Clause and the Service of Suit Clauses. (Oral Stipulation; *see also* Certificate at 28-29.) Likewise, the parties stipulate that Veros is an "Assured" within the meaning of the First Service of Suit Clause. (Oral Stipulation.) The Certificate unambiguously identifies Veros as the "Insured"—the term used in the Second Service of Suit Clause. (Certificate at 2.)

### E. **Other Pertinent Stipulations**

In light of the parties' stipulation that the Jurisdiction Clause selects the New York state courts only, the Underwriters acknowledged that dismissal under the doctrine of *forum non conveniens*, not transfer of venue under 28 U.S.C. § 1404(a), is the appropriate mechanism for compelling compliance with the Jurisdiction Clause. (Oral Stipulation.) As such, the Underwriters cast their request to transfer venue of the AP to the SDNY as a "consensual" alternative to dismissal. (Oral Stipulations.)[19]

There is no dispute that all of the Claims fall within the scope of both the Jurisdiction Clause and the Service of Suit Clauses.[20] (*See* Venue Filings, *passim*.) Further, there is no dispute that this court and the District Court are courts of "competent jurisdiction" within the meaning of the Service of Suit Clauses.[21] (*See id.*)

The parties stipulate that the convenience of the parties and witnesses favors an Alabama forum over a New York forum; however, the parties do not agree that such private interest factors are relevant to the Motion. (Joint Stipulations at 3.)

The parties further stipulate that federal law governs the issue of whether a forum selection clause is "enforceable." (*See* Joint Stipulations at 2.)[22] The parties disagree as to whether the federal law of "enforceability" applies to their contract interpretation dispute. Veros asks the court to apply federal law, and the Underwriters ask the court to apply New York state law per the Choice of Law Clause.[23]

---

[19] Veros initially indicated on the record of the Evidentiary Hearing that it preferred transfer to dismissal. In subsequent Hearings Veros affirmatively stated that it did not consent to transfer.

[20] It is not clear to the court that Claims against GCube in its individual capacity are subject to the Service of Suit Clauses. However, because the parties' stipulated that GCube is an Underwriter for purposes of these proceedings, the court need not reach this issue.

[21] New York courts applying New York law and federal courts applying federal common law have construed "a court of competent jurisdiction" to be a court with subject matter jurisdiction and, by virtue of the parties' agreement, personal jurisdiction. *See, e.g., Copenhagen Reinsurance Co. (UK) Ltd. v. Sargeant Marine, Inc.*, No. 98 CIV. 1476, 1998 WL 323489, at *1-2 (S.D.N.Y. June 17, 1998) (Baer, J.); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Worley*, 257 A.D.2d 228, 231 (N.Y. App. Div. 1999); *see also IAL Aircraft Holding, Inc. v. F.A.A.*, 206 F.3d 1042, 1046 (11th Cir. 2000), *mandate recalled and vacated on other grounds*, 216 F.3d 1304 (11th Cir. 2000). As discussed in the "Jurisdiction" section of this memorandum opinion, the court independently concludes that this court and the District Court have subject matter jurisdiction over the Claims.

[22] *See also Wylie v. Kerzner Int'l Bahamas Ltd.*, 706 Fed. App'x 577, 579-80 (11th Cir. 2017) (per curiam).

[23] At least one Alabama district court has observed that Eleventh Circuit precedent does not mandate application of federal common law when the "question is not *whether* to enforce a forum selection clause, but *which* forum selection clause governs this dispute." *CIS Fin. Servs., Inc. v. Brooks*, No. 6:13-CV-1281-SLB, 2014 WL 1234153, at *3 (N.D. Ala. Mar. 25, 2014) (Blackburn, J.) (emphasis in original) (declining to decide whether federal common law or Alabama law applied since the laws were closely aligned on the relevant principles of contract interpretation). Notably, the Eleventh Circuit recently remanded a case for a determination as to whether, in a diversity action, "the *validity* of a forum-selection clause is distinct from, and antecedent to, its *enforceability*, or whether the validity of such a clause is just part of the federal law of

7

GCube and Kiln, individually and on behalf of all Underwriters, stipulate that they will not "raise a statute of limitations defense against a suit filed in New York state court asserting the same claims currently pending in the bankruptcy court, provided suit is filed within 90 days after dismissal of [the AP]" or within such "reasonable additional time" as the court deems necessary. (*See* Undue Prejudice Stipulation at 2.)

## JURISDICTION

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b), as the Claims in the AP are at least "related to" the Bankruptcy Case.[24] *See Miller v. Kemira, Inc. (Matter of Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990); *Wood v. Wood* (*Matter of Wood*), 825 F.2d 90, 93 (5th Cir. 1987) ("For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings 'arising under', 'arising in a case under', or 'related to a case under', title 11. These references operate conjunctively to define the scope of jurisdiction. Therefore, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy."); *see also Winchester Global Tr. Co. v. Entrust NPL, Corp. (In re Ryan)*, 276 Fed. App'x 963, 966 (11th Cir. 2008) (per curiam) (unpublished opinion). A case is "related to" a case under title 11 if it "could conceivably have an effect on the estate being administered in bankruptcy." *Lemco Gypsum*, 910 F.2d at 788.

The Certificate and the Claims are property of the Estate. *See* 11 U.S.C. § 541.[25] Pursuant to the terms of the Plan and the order confirming the Plan, proceeds recovered on the Claims shall be disbursed to creditors. (*See* Plan § 6.6; BK Docs. 451, 494; *see also* AP Doc. 48 at 3.) The Eleventh Circuit has upheld the exercise of "related to" jurisdiction where the underlying claims, if prevailed upon, would yield a benefit, including additional funds, to a bankruptcy estate. *See, e.g., Carter v. Rodgers*, 220 F.3d 1249, 1253-54 (11th Cir. 2000), *cert. denied*, 531 U.S. 1077 (2001); *In re Ryan*, 276 Fed. App'x at 966.

Some courts interpret "related to" jurisdiction more narrowly in the post-confirmation context, granting jurisdiction only when there is a sufficiently "close nexus" to the debtor's plan. *See, e.g., Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 166-167 (3d Cir. 2004); *Overton v. Chrysler Grp. LLC*, No. 2:17-cv-01983, 2018 WL 847772, at *5 (N.D. Ala. Feb. 13, 2018) (Proctor, J.). Under this standard, courts hold that only proceedings to interpret, implement,

---

enforceability, as developed in *Bremen*, [407 U.S. 1 (1972)] and expounded upon through *Atlantic Marine* [571 U.S. 49 (2013)]." *See Wylie*, 706 Fed. App'x at 580 (emphasis in original). Resolution of the choice of law dispute is not determinative. *See* Analysis and Conclusions *infra*. Accordingly, the court does not decide whether New York law or federal law applies.

[24] The defendants allege that a federal district court would have 28 U.S.C. § 1332 diversity jurisdiction of this action. The Certificate lists a Newport Beach, California address for GCube, a London address for Kiln, and a Texas address for the Insurance broker and also provides that the "business address" for each Underwriter is Lloyd's London address. (*See* Certificate at 4, 6, 23.) Veros alleges that GCube is a California corporation and that Kiln is a foreign corporation, but the defendants have not admitted these allegations, and there is insufficient evidence for the court to establish the citizenship of GCube and Kiln for diversity purposes. (*See* BK and AP Dockets, *passim*.) Further, the parties agree that GCube and Kiln are proceeding individually and in their representative capacities. (Oral Stipulation; *see also* AP Doc. 67 at 2). The citizenship of the other syndicate members on whose behalf GCube and Kiln have appeared also is not established by the record. Accordingly, the court cannot ascertain whether a federal district court would have subject matter jurisdiction under 28 U.S.C. § 1332. *See, e.g., Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1088-91 (11th Cir. 2010).

[25] (See also Plan § 6.8; BK Doc. 91 at 1.)

consummate, execute, or administer a debtor's chapter 11 plan have the requisite "close nexus" for the exercise of post-confirmation jurisdiction. *See Overton*, 2018 WL 847772, at *5 (citing *In re Resorts Int'l*, 372 F.3d at 167).

Even the heightened "close nexus" standard, which the Eleventh Circuit has not adopted,[26] is satisfied here. The Plan is a chapter 11 liquidating plan, as opposed to a chapter 11 plan of reorganization. (*See* Plan, *passim*). The Estate is preserved under the Plan, and the Claims are part of the Estate that Veros is tasked with liquidating for the benefit of creditors. Any recovery on the Claims necessarily will affect the Plan's administration. (*See* Plan §§ 6.6, 6.8; AP Doc. 48 at 3.) In such circumstances, other Eleventh Circuit courts have found a sufficiently "close nexus" to permit the exercise of subject matter jurisdiction post-confirmation. *See Fla. Dev. Assocs. Ltd. v. Knezevich & Assocs. (In re Fla. Dev. Assocs., Ltd.)*, Bankr. Nos. 04-12033, 04-12034, 04-12035, Adversary No. 08-1389, 2009 WL 393870, at *4-5 (Bankr. S.D. Fla. Feb. 4, 2009) (Cristol, J.); *see also Carbide Indus., LLC v. Lecessee Constr. Servs., LLC (In re Carbide Indus., LLC)*, Nos. 6:14-bk-09894, 6:15-ap-00159, 2016 WL 3571295, at *3 (Bankr. M.D. Fla. June 29, 2016) (Jennemann, J.).

Although the parties do not dispute that this court (and the District Court) have subject matter jurisdiction to hear the Claims, the parties disagree as to whether the Claims are core or non-core under 28 U.S.C. § 157. Subject to constitutional limitations,[27] § 157(b) confers on a bankruptcy court the power to hear and determine "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11," and to enter appropriate orders and judgements, subject to appellate review under 28 U.S.C. § 158. 28 U.S.C. § 157(b); *see also Wortley v. Bakst*, 844 F.3d 1313, 1318 (11th Cir. 2017). If a proceeding is core, then the bankruptcy court may enter final judgment, regardless of whether the parties consent. *Wortley*, 844 F.3d at 1318. In a non-core proceeding, however, the bankruptcy judge may not enter a final judgment absent consent of the parties and must, instead, submit proposed findings of fact and conclusions of law to the district court for de novo review. *See id.*; 28 U.S.C. § 157(c).

For purposes of this memorandum opinion, the court need not decide whether the Claims are core or non-core. In non-core proceedings, as well as in proceedings involving *Stern* claims (i.e., claims that are statutorily core but that the bankruptcy court lacks constitutional authority to finally adjudicate), a bankruptcy court may issue non-final orders. *See e.g.*, *O'Toole v. McTaggart (In re Trinsum Grp., Inc.)*, 467 B.R. 734, 739-40 (Bankr. S.D.N.Y. 2012) (Glenn, J.); *see also Reliable Air, Inc. v. Jape (In re Reliable Air, Inc.)*, Nos. 05-85627, 07-6352, 2007 WL 7143407, at *2 (Bankr. N.D. Ga. Sept. 14, 2007) (Massey, J.); 10 COLLIER ON BANKRUPTCY ¶ 9033.02 (16th ed. 2018). An order denying a motion to

---

[26] *See Overton*, 2018 WL 847772, at *5 ("Although the Eleventh Circuit has not adopted the close nexus test (or any test for post-confirmation jurisdiction, for that matter) this court finds the close nexus test persuasive in deciding that jurisdiction exists over this action because Plaintiffs' claims against [the Defendant] will require the deciding court to interpret and potentially implement the Bankruptcy Court's Orders.").

[27] In *Stern v. Marshall*, 564 U.S. 462 (2011), the United States Supreme Court held that a bankruptcy court, as a non-Article III court, might lack authority to adjudicate a statutorily core proceeding under a constitutional analysis. *Id.* at 482-87. *Stern* involved a creditor's proof of claim for defamation and a non-dischargeability complaint, to which the debtor answered and interposed a tortious interference counterclaim under state law. The Supreme Court determined the counterclaim to be a core proceeding under § 157(b)(2)(C) but went on to hold that Congress lacked constitutional authority to confer on bankruptcy courts the authority to finally decide such claims. *See generally id.* at 482-501. Where a claim is statutorily core but the bankruptcy court lacks constitutional authority to finally adjudicate the claim, the bankruptcy court must treat the claim as if it were non-core, and, absent consent, make proposed findings of fact and conclusions of law to the district court. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932, 1944-46 (2015); *Exec. Benefits Ins. Agency v. Arkison*, 134 S.Ct. 2165, 2173 (2014).

dismiss is not a final order. *See, e.g., Catlin v. United States*, 324 U.S. 229, 236 (1945); *Wallace v. Norman Indus.*, 467 F.2d 824, 826 (5th Cir. 1972); *In re Trinsum Grp.*, 467 B.R. at 741-42. Similarly, an order denying a motion to transfer is an interlocutory ruling, not a final order. *See, e.g., Wallace*, 467 F.2d at 826; *In re Humble Oil & Ref. Co.*, 306 F.2d 567, 568 (5th Cir. 1962) (per curiam); *Ogier v. Daniels (In re Patterson)*, Nos. 14-65877, 16-5059, 2016 WL 4919947, at *1 (Bankr. N.D. Ga. Sept. 2, 2016) (Bonapfel, J.). Accordingly, irrespective of whether the Claims are core or non-core, this court has the authority to enter an order denying the Motion.

**ANALYSIS AND CONCLUSIONS**

Relying on the Jurisdiction Clause, the Underwriters ask the court to dismiss the AP. When a forum selection clause selects a non-federal forum, the appropriate way to enforce the clause is through the doctrine of *forum non conveniens*. *See Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013).

Under a traditional *forum non conveniens* analysis, the movant "must show that '(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.'" *GDG Acquisitions LLC v. Gov't of Belize*, 849 F.3d 1299, 1312 (11th Cir. 2017) (quoting *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001)). Private interest factors include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Atl. Marine*, 571 U.S. at 63 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n.6 (1981)). Public-interest factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action . . . and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft*, 454 U.S. at 241, n.6 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)); *see also Atl. Marine*, 571 U.S. at 63, n.6. "The Court must also give some weight to the plaintiffs' choice of forum." *Atl. Marine*, 571 U.S. at 63, n.6 (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). The reviewing court must weigh these factors and determine whether, on balance, dismissal "would serve the convenience of the parties and witnesses and otherwise promote the interest of justice." *Atl. Marine*, 571 U.S. at 62-63; *see also GDG Acquisitions*, 849 F.3d at 1312.

There is no dispute that the Underwriters have not made the requisite showing for dismissal for *forum non conveniens* under a traditional analysis. In fact, the Underwriters stipulate that all of the private interest factors weigh in favor of an Alabama forum (either this court or the District Court). (Joint Stipulations at 3.) To support their dismissal request, the Underwriters rely solely on the Jurisdiction Clause.

When there is a *single* (valid and enforceable[28]) forum selection clause selecting a non-federal forum, the traditional *forum non conveniens* analysis is altered in two significant ways. First, "the plaintiff's

---

[28] "A forum-selection clause will be invalidated when: (1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009).

Case 16-70021-JHH    Doc 96    Filed 04/26/18    Entered 04/26/18 13:28:41    Desc Main
Document      Page 10 of 22

choice of forum merits no weight. Rather, as the party defying the forum selection clause, the plaintiff bears the burden of establishing that" enforcement of the forum selection clause is "unwarranted." *Atl. Marine*, 571 U.S. at 63; *see also GDG Acquisitions*, 849 F.3d at 1312. Second, the court "should not consider arguments about the parties' private interests[,]" because, "[w]hen parties agree to a forum selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient." *Atl. Marine*, 571 U.S. at 64; *see also GDG Acquisitions*, 849 F.3d at 1312. The court "must deem the private[]interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine*, 571 U.S. at 64; *see also GDG Acquisitions*, 849 F.3d at 1312. Consequently, the court may only consider arguments about public interest factors. *Atl. Marine*, 571 U.S. at 64; *see also GDG Acquisitions*, 849 F.3d at 1312. "[T]he practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine*, 571 U.S. at 64; *see also GDG Acquisitions*, 849 F.3d at 1312.

The Certificate contains at least three provisions pertaining to "jurisdiction." Veros asserts that each of the "jurisdiction" clauses is a forum selection clause; that the clauses conflict, rendering the Certificate ambiguous; and that such ambiguity must be resolved in its favor. For their part, the Underwriters do not acknowledge any ambiguity in the Certificate, arguing that the Service of Suit Clauses merely operate as consents to personal jurisdiction, not consents to litigate in a particular forum. For the reasons set forth below, the court concludes that the Service of Suit Clauses are properly characterized as forum selection clauses.

Neither *Atlantic Marine* nor *GDC Acquisitions* involved multiple forum selection clauses, and federal courts have taken varied analytical approaches when multiple forum selection clauses govern the same claims. *See, e.g.*, *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 760-62 (7th Cir. 2006) (undertaking a contract interpretation analysis and finding a "non-exclusive jurisdiction" clause selecting a forum did not render a mandatory forum selection clause selecting the same forum permissive); *Intelligent Discovery Mgmt., LLC v. Omnivere Holding Co., LLC*, No. 1:15-cv-01134, 2016 WL 3876424, at *3 (D. Del. July 15, 2016) (Sleet, J.) (disregarding competing forum selection clauses in favor of a traditional analysis under 28 U.S.C. § 1404(a)[29]); *Samuels v. Medytox Solutions, Inc.*, No. 13-7212, 2014 WL 4441943, at *4-5 (D. N.J. Sept. 8, 2014) (Wigenton, J.) (considering competing private interests of the parties, "giving due regard to [both] forum selection clauses," and analyzing public interest factors to determine whether transfer under § 1404(a) would be appropriate). Of course, if considered in isolation, the subject clauses dictate the same result, the court need not reach this issue. Here, however, application of a particular venue provision is outcome determinative, and the court cannot give near determinative weight to the Jurisdiction Clause without nullifying the Service of Suit Clauses (and vice versa).

Considering the competing venue provisions in the Certificate, and the procedural posture of the litigation, the court holds that the *forum non conveniens* analysis is altered by the forum selection clauses, but not to the extent set forth in *Atlantic Marine*. The court will give effect to Veros's private interest waiver, but the court will not completely disregard Veros's chosen forum (and require Veros to show why enforcement of the Jurisdiction Clause is unwarranted) as the Service of Suit Clauses at least permit litigation in this forum given the procedural posture of the Claims. Under this analytical

---

[29] Although the analysis of a motion to transfer under 28 U.S.C. § 1404(a) is not identical to the *forum non conveniens* analysis (*see Piper Aircraft*, 454 U.S. at 253) such cases are instructive. *See Atl. Marine*, 571 U.S. at 60 ("Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system.").

framework, and because the public interest factors weigh against dismissal, the Motion is due to be denied.

Moreover, the court concludes that, as a matter of contract interpretation, litigation of the Claims in an Alabama federal forum is permitted by the Certificate. The "jurisdiction" clauses in the Certificate are inconsistent and susceptible to more than one reasonable interpretation. Resolving the uncertainty by adopting the reasonable interpretation that most favors the insured (Veros), the Service of Suit Clauses preserved to the Underwriters only two means of enforcing the Jurisdiction Clause—transfer (provided transfer to the state court forum is procedurally available) and commencement of a suit in New York state court. As the AP cannot be transferred to New York state court, and the Underwriters have not commenced an action in New York state court nor sought relief from stay in the Bankruptcy Case to file an action in New York, dismissal is neither necessary nor appropriate under the terms of the Certificate.

## A. The Service of Suit Clauses are properly characterized as forum selection clauses.

"[C]ourts frequently classify forum selection clauses as either permissive or mandatory." *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004). A "mandatory" or "full" forum selection clause "dictates an exclusive forum for litigation under the contract," while a permissive forum selection clause "authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere." *Id.* (quoting *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 n.24 (11th Cir. 1999)); *see also Signature Fin. LLC v. Neighbors Global Holdings, LLC*, 281 F. Supp. 3d 438, 447 (S.D.N.Y. 2017) (Rakoff, J.) (explaining that New York law recognizes "full" forum selection clauses as those that bind all parties to sue only in the fora specified in the contract, as well as "permissive venue" clauses that "provide a non-exclusive forum for dispute resolution by specifying, for example, that the parties agree to the venue and jurisdiction" of a particular territory's courts) (internal citation omitted).

The Eleventh Circuit also recognizes a third category of forum clauses—"hybrid provisions." *See Ocwen Orlando Holdings Corp. v. Harvard Prop. Trust, LLC*, 526 F.3d 1379, 1381 (11th Cir. 2008) (citing *Snapper*, 171 F.3d at 1262 n.24). These are provisions that are permissive as to the plaintiff's initial forum selection but mandatory as to the defendants once the forum is selected. *See id.* New York law similarly recognizes such hybrid provisions, characterizing them as "mandatory consent[s] to jurisdiction." *See Signature Fin.*, 281 F. Supp. 3d at 447 (explaining that, under New York law, a "mandatory consent to jurisdiction clause . . . does not establish one possible forum for the resolution of disputes arising under the contract—it guarantees to one party the right to bring cases in the forum of its choice.").

There is no dispute that, considered in isolation, the Jurisdiction Clause is properly characterized as a mandatory forum selection clause. (*See* Venue Filings*, passim.*)[30] Were the Jurisdiction Clause the only forum selection clause, it would be entitled to near determinative weight in the court's analysis (provided it is enforceable).[31]

---

[30] *See also Global Satellite Commc'n Co.*, 378 F.3d at 1272 (holding that use of "the imperative 'shall,' is most reasonably interpreted to mandate venue" in the designated forum); *Certain Underwriters at Lloyd's v. New Dominion, LLC*, No. 16cv5005, 2016 WL 4688866, at *3 (S.D.N.Y. Sept. 7, 2016) (Cote, J.) (finding a mandatory forum selection clause under New York law where the clause required that "all litigation . . . shall take place" in the selected forum) (emphasis omitted).
[31] Veros argues the Jurisdiction Clause is unenforceable. As noted above, the court does not reach this issue. *See supra* note 3.

12

The parties disagree as to the whether the Service of Suit Clauses are properly characterized as forum selection clauses and, if so, what type. The Eleventh Circuit Court of Appeals has treated service of suit clauses as hybrid venue provisions that mandate litigation in the insured's choice of forum upon commencement of suit by the insured. *See Russell Corp. v. Am. Home Assurance Co.*, 264 F.3d 1040, 1046-50 (11th Cir. 2001). The Underwriters maintain, however, that New York law should govern the "interpretation" and "classification" of the Service of Suit Clauses, arguing that New York courts construe service of suit clauses as consents to *personal* jurisdiction only. In support of this argument, the Underwriters cite two New York state court cases: *Brooke Grp. Ltd. v. JCH Syndicate 488*, 87 N.Y.2d 530 (N.Y. 1996) and *Price v. Brown Grp., Inc.*, 619 N.Y.S.2d 414 (N.Y. App. Div. 1994).

In *Brooke Group*, the plaintiff insureds filed suit in New York state court premised on a Lloyd's service of suit clause. Holding that a service of suit clause is not a mandatory (or "full") forum selection clause, New York's highest court characterized the service of suit clause as a "consent to jurisdiction." 87 N.Y.2d at 534. Nowhere does the word "personal" appear in the *Brooke Group* court's holding. While the *Brooke Group* court concluded that the subject consent to jurisdiction did not bar the syndicate underwriters from bringing a motion to dismiss for *forum non conveniens*, in so holding the *Brooke Group* court did *not* disregard the underwriters' consent to the New York forum. In fact, the *Brooke Group* court held that the subject service of suit clause *should* be given weight in the *forum non conveniens* analysis and affirmed the lower court's dismissal for *forum non conveniens* based on factors "unrelated to New York" (the insureds' chosen forum). *Id.* at 535.

As the Eleventh Circuit noted in its discussion of *Brooke Group* in *Russell*, "private parties cannot bargain away the power of a federal court to order the dismissal or transfer of a case based upon *forum non conveniens* grounds" because a party "may not waive the public's interest." *Russell*, 264 F.3d at 1047-48 (internal quotation omitted). Implicit in *Brooke Group*—and explicit in *Russell*—is the recognition that a party may waive private interest challenges to a forum via a service of suit clause. *Id.*; *Brooke Grp.*, 87 N.Y.2d at 534-35. At most, *Brooke Group* stands for the proposition that the New York court likened the subject service of suit clause to a permissive venue provision, rather than treating it as a mandatory consent to jurisdiction or a "full" forum selection clause. *See* 87 N.Y.2d at 534-35 (stating "we interpret the 'Service of Suit Clause' as permissive and conclude that its terms do not require defendants to litigate this dispute in New York").

The *Brooke Group* case also is factually distinguishable. As other courts have observed, there is nothing in the *Brooke Group* decision to suggest that the subject service of suit clause required the syndicate underwriters to abide by the final decisions of the insured's chosen forum. *See, e.g., Transit Cas. Co. in Receivership v. Certain Underwriters at Lloyd's of London*, 963 S.W. 2d 392, 401 (Mo. Ct. App. 1998). The Service of Suit Clauses do so provide. Moreover, in *Brooke Group*, the court was tasked with reconciling a service of suit clause with a competing, mandatory arbitration clause. 87 N.Y.2d at 533. The court recognized an "apparent conflict" between the mandatory arbitration provision and the service of suit clause, and, thus, gave more limited effect to the service of suit clause than it might have done had the insureds not waived their right to a judicial forum. *Id.* at 533-34; *see Transit Cas. Co.*, 963 S.W. 2d at 401. No party has alleged that Veros waived its rights to bring the Claims in a judicial forum, and the only arbitration provision in the Certificate appears in the General Conditions and is headed "Arbitration Clause (For All Territories *Excluding USA*)." (*See* Certificate at 13 (emphasis added).)

*Price*, an intermediate appellate decision that pre-dates *Brooke Group*, involved a motion by the insured to dismiss a declaratory judgment action commenced by the underwriters in New York state

13

court. Subsequent to the filing of the New York action, the insured filed suit in Missouri and argued that, under the service of suit clause in the insurance contract, it had the exclusive right to select the forum for litigation. Finding that it would be unreasonable to require the underwriters to litigate in any jurisdiction selected by the insured, no matter how remote, the court held the service of suit clause did not give the insured the exclusive right to select the forum. 619 N.Y.S.2d at 418-19. The crux of the *Price* holding is that the subject service of suit clause did not "block an otherwise valid action brought by [the] insurer." *Id.* at 418. The Service of Suit Clauses in the Certificate expressly allow the Underwriters to commence suit in another United States court—stating that the clauses do not operate to waive such right. (*See* Certificate at 8, 17.) The *Price* court did not hold that the consent to "jurisdiction" in the subject service of suit clause was *in personam* only. Instead, as in *Brooke Group*, the consent to the insured's chosen forum was treated as permissive, not mandatory, or otherwise unenforceable. 619 N.Y.S.2d at 417-19.

As one federal court has observed, New York courts will not *enforce* "consent to jurisdiction clauses that force one party to submit to suit anywhere." *See Signature Fin.*, 281 F. Supp. 3d at 448 (citations and emphasis omitted). The same court also noted, however, that the mere fact that a mandatory consent is "floating"—in other words it allows the plaintiff to choose one of multiple fora—does not render it unenforceable as a matter of New York state law. *See id.* First, *enforcement* of the subject consents to jurisdiction is governed by federal law, not state law. *Wylie*, 706 Fed. App'x at 580; *see also* Joint Stipulations at 2. As the *Russell* decision shows, the Eleventh Circuit will enforce broad consents to jurisdiction in the United States. *Russell*, 264 F.3d at 1047 ("By the plain language of the service of suit clause contained in its policy, [the defendant] agreed to submit to any court of competent jurisdiction selected by Russell and to comply with all requirements necessary to give such court jurisdiction over a dispute between [the parties]. To permit [the defendant] to consent to removal from the forum selected by Russell would defy the express language of [the] contract."). Second, the consents to jurisdiction contained in the Service of Suit Clauses are more limited in scope than the consents to jurisdiction at issue in the *Brooke Group* and *Price* cases. The Service of Suit Clauses expressly state that the clauses do not operate to waive the Underwriters' rights to remove litigation, transfer litigation, or commence a new suit and, therefore, do not require the Underwriters to litigate "anywhere" in the United States.

Although the Service of Suit Clauses do not operate to waive the Underwriters' rights to remove or transfer or file a separate suit, the Service of Suit clauses do not *reserve* to the Underwriters the right to dismiss an action filed by Veros in its preferred forum. Thus, although the Underwriters' consent to venue in the Service of Suit Clauses is limited, it is not without effect. *See Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*, 88 F. Supp. 3d 1156, 1163-64 (S.D. Cal. 2015) (Anello, J.). As the Eleventh Circuit has observed, "it would border on the absurd to enforce only those forum selection clauses that operate to displace contractually the normal rules of venue and personal jurisdiction to the greatest extent, and not to enforce those that only minimally displace federal procedure." *Snapper*, 171 F.3d at 1262 n.24.

This court is not alone in characterizing service of suit clauses as consents to litigate in the insured's chosen forum. *See Travelers Ins. Co. v. Keeling*, 996 F.2d 1485, 1489-90 (2d Cir. 1993) (construing service of suit clause as forum selection clause pursuant to which insurer waived right of removal); *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1209 n.1, 1216-18 (3d Cir. 1991), *cert. denied*, 502 U.S. 908 (1991) (same); *City of Rose City v. Nutmeg Ins. Co.*, 931 F.2d 13, 14-16 (5th Cir. 1991), *cert. denied*, 502 U.S. 908 (1991) (same); *Sevigny v. British Aviation Ins. Co. Ltd.*, No. 15-cv-127, 2015 WL 3755204, at *2-3 (D. N.H. June 16, 2015) (DiClerico, J.); *Mosing v. Zloop, Inc.*, No. H-15-136, 2015 WL 1841212,

14

at *2 (S.D.Tex. Apr. 22, 2015) (Miller, J.); *Tri–Union Seafoods*, 88 F. Supp. 3d at 1162-63; *Hazelwood Logistics Ctr. LLC v. Illinois Union Ins. Co.*, No. 4:13-CV-2572, 2014 WL 805886, at *2 (E.D. Mo. Feb. 28, 2014) (Shaw, J.); *Hanover Ins. Group v. Chartis Specialty Ins. Co.*, No. 12-40156, 2013 WL 4495659, at *3 (D. Mass. Aug. 19, 2013) (Hillman, J.); *BEPCO, L.P. v. Santa Fe Minerals, Inc.*, No. 11-01332, 2011 WL 4499322, at *3-5 (W.D. La. Apr. 25, 2011) (Kirk, Maj. J.), *appeal dismissed*, 675 F.3d 466 (5th Cir. 2012); *Fleming Bldg. Co., Inc. v. Columbia Cas. Co.*, 751 F. Supp. 2d 1218, 1219-21 (N.D. Okla. 2010) (Frizzell, J.); *Dinallo v. Dunav Ins. Co.*, 672 F. Supp. 2d 368, 370-71 (S.D.N.Y. 2009) (Cote, J.), *aff'd*, 402 Fed. App'x 595 (2d Cir. 2010); *Oxford Realty Grp., LLC v. Axis Reinsurance Co.*, No. 08-CV-6303, 2009 WL 1324028, at *4-5 (D. N.J. May 12, 2009) (Martini, J.); *Sestech Envtl. LP v. Westchester Surplus Lines Ins. Co.*, No. 1:08CV2417, 2009 WL 233620, at *1-2 (N.D. Ohio Jan. 30, 2009) (O'Malley, J.); *Am. States Ins. Co. v. Century Sur. Co.*, No. C08-1163Z, 2008 WL 4779833, at *2-3 (W.D. Wash. Oct. 30, 2008) (Zilly, J.).

**B. Even if the Service of Suit Clauses are merely "permissive", they are entitled to weight in a federal, *forum non conveniens* analysis.**

The Eleventh Circuit rejects the notion that a forum selection clause is "per se unenforceable" merely because it is permissive. *See Snapper*, 171 F.3d at 1262 n.24. Most often, challenges to permissive forum selection clauses arise in the context of motions to dismiss or transfer brought to compel the plaintiff to litigate in a permitted forum (i.e., the defendant, not the plaintiff, is seeking to enforce a permissive forum selection clause). *See, e.g., Citro Fla., Inc. v. Citrovale, S.A.*, 760 F.2d 1231, 1231-32 (11th Cir. 1985) (per curiam); *see also Cardoso v. Coelho*, 596 Fed. App'x 884, 885-86 (11th Cir. 2015) (per curiam); *PNC Bank, N.A. v. GVTG, LLC*, 592 Fed. App'x 775, 778-79 (11th Cir. 2014). The holdings in such cases do not support dismissal or transfer of an action when the plaintiff files litigation *in* a permitted forum. *See Snapper*, 171 F.3d at 1262 n.24. Accordingly, even if the Service of Suit Clauses are properly characterized as "permissive" forum selection clauses, they are entitled to weight in a federal *forum non conveniens* analysis.[32]

Both *Brooke Group* (applying New York law) and *Russell* (applying federal common law) support the conclusion that service of suit clauses operate to waive private interest challenges to the insured's chosen forum. Although the Service of Suit Clauses each include a sentence limiting the effect of this waiver—reserving to the Underwriters the right to raise such private interest challenges in support of a motion to transfer[33] or remove the litigation, as well as in defense of a motion to dismiss a suit

---

[32] This conclusion is not contrary to the District Court's decision in *MDI Services. See U.S. ex rel MDI Servs. v. Fed. Ins. Co.*, No. 5:13-cv-2355, 2014 WL 1576975, at *3-4 (N.D. Ala. Apr. 17, 2014). In *MDI Services* the court discussed the appropriate weight to give a permissive forum selection clause under a *forum non conveniens* analysis when the movant seeks to transfer the litigation *to* the forum selected by the clause, not *away from* the permitted venue. *See id.* (concluding that the subject forum selection clause was mandatory and transferring the action).

[33] It bears mention that, although the Service of Suit clauses (considered alone) do not foreclose transfer to the SDNY, the Underwriters have not shown that transfer to the SDNY is for the convenience of the parties or in the interests of justice under 28 U.S.C. § 1404(a) or § 1412 (the parties disagree as to which statute applies). *See* 28 U.S.C. § 1412 (2018) ("A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."); *id.* § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."). There is no dispute that the private interest factors all weigh against transfer to the SDNY, and, as the below discussion of the *forum non conveniens* analysis highlights, transfer to the SDNY would not serve the interests of justice. *See* Analysis and Conclusions *infra* Part C. Further, the Jurisdiction Clause that the Underwriters seek to enforce forecloses transfer to the SDNY. *See* Analysis and Conclusions *supra*. Finally, to the extent the Underwriters seek transfer under 28 U.S.C. § 1404(a), they have not established that venue is proper in

15

commenced by the Underwriters—the Underwriters' waiver precludes dismissal of the AP (filed by Veros pursuant to the Service of Suit Clauses) on private interest grounds.

**C.** **The existence of multiple forum selection clauses alters the Post-*Atlantic Marine, forum non conveniens* analysis.**

The Supreme Court and Eleventh Circuit do not address how the presence of multiple forum selection clauses alters the *forum non conveniens* analysis. *See generally Samuels*, 2014 WL 4441943, at *4 (noting that *Atlantic Marine* involved "only one unambiguous forum selection clause"). Some federal courts will attempt to reconcile competing forum provisions before assessing whether dismissal or (transfer) is warranted. *See, e.g., Muzumdar*, 438 F.3d at 760-62. Other courts view the appropriate inquiry as whether the presence of multiple forum selection clauses governing the parties' claims alters the *forum non conveniens* analysis. *See Samuels*, 2014 WL 4441943, at *4-5. Following the latter approach, the court will undertake to fashion a *forum non conveniens* analysis that takes into account the parties' respective venue consents.

In the AP each party is as much a party denying enforcement of a forum selection clause as it is a party seeking to enforce a forum selection clause. While Veros broadly waived its right to raise private interest factors in opposition to the Motion (via the Jurisdiction Clause), the court cannot (and should not) ignore that the Underwriters likewise waived their right to raise private interest factors in support of the Motion (via the Service of Suit Clauses). Accordingly, the court will disregard any private interest factors in its analysis.

The court will not, however, relieve the movants of their burden to show that the *forum non conveniens* analysis is otherwise satisfied. The Underwriters consented to litigate in Veros's chosen forum and did not reserve the right to dismiss the AP. Veros should not be required to show unusual circumstances to litigate in a consensual venue. Likewise, had the Underwriters commenced their own suit in New York state court, they should not be required to show unusual circumstances to continue in that forum.

Turning to the question of whether, disregarding private interest factors, the Underwriters have met their burden, the court concludes they have not. There is no dispute that the state courts of New York are an adequate and available forum. *See Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1330-31 (11th Cir. 2011) (quoting *Piper Aircraft*, 454 U.S. at 254 and n.22) (explaining a forum is "available" when the defendant is amenable to process in the forum and that a forum is "inadequate" if the remedy provided by the forum is so "unsatisfactory that it is no remedy at all"). Furthermore, the Undue Prejudice Stipulation removes any impediment to reinstating litigation in the New York state courts. *See id.* at 1335; *see also Grp. CG Builders & Contractors*, 534 Fed. App'x 826, 830 (11th Cir. 2013). The Underwriters fail to show, however, that the public interest factors weigh in favor of dismissal. Although the Underwriters summarily allege that "all public interest factors . . . weigh in favor" of litigating in a New York forum, the only public interest factor that the Underwriters specifically identify is familiarity of the forum with the law that will govern the case. Veros counters that this is a local controversy and has no nexus to New York and also points to the public interests implicated by the Bankruptcy Case.

_____

the SDNY, and a forum selection clause selecting a state court forum does not operate as a consent to venue in a federal forum situated in the state.

The factual findings and stipulations set forth above support Veros's assertion that Alabama has a local interest in the case and that, but for the Jurisdiction and Choice of Law Clauses, the litigation is entirely unrelated to New York. Although, to date, no party has demanded a jury trial in the AP, the Underwriters have alluded to the possibility of a jury demand on the records of the Hearings. The Supreme Court has explained:

> Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947) (superseded on other grounds by 28 U.S.C. § 1404). Given the Plant explosion and subsequent shut down, Alabama residents have a compelling interest in having the Claims litigated in this state, particularly if the Underwriters intend to demand a jury trial.

Veros's bankruptcy filing also implicates public interest factors favoring an Alabama federal forum. The Claims are property of the Estate and are being liquidated for the benefit of creditors. The Owners will not receive any distribution in respect of their *equity* interests unless and until holders of General Unsecured Claims receive 100 percent of the total allowed amount of such claims (which appears highly unlikely given that the alleged value of the Claims and other Estate assets total less than the allowed amount of the Owners' General Unsecured Claims). Although it is notable that the Owners' General Unsecured Claims were only subordinated to other General Unsecured Claims until the 50% Distribution was achieved (and also that the Owners will be entitled to receive a significant portion of any further Plan disbursements to holders of General Unsecured Claims), this does not diminish the interests of Veros's other creditors in seeing the value of the Claims maximized. Indeed maximizing the value of the Claims is of prime significance to the non-insider holders of General Unsecured Claims, given their fractional disbursements. Based on the Plan and Disclosure statement—neither of which were objected to by GCube—Veros's non-insider creditors had a reasonable expectation that the Claims would be litigated in an Alabama federal forum. The Estate has very limited funds on hand. If Veros is required to litigate in New York, the Post-Confirmation Committee (effectively) will be deprived of the opportunity to perform its duties under the Plan. Irrespective of whether such factors render the Jurisdiction Clause unenforceable as a matter of federal public policy, they are appropriately considered as public interest factors that weigh against dismissal in a federal *forum non conveniens* analysis. *See Bavaria Yachts USA, LLLP v. Bavaria Yachtau GmbH (In re Bavaria Yachts USA, LLLP)*, 575 B.R. 540, 560-63 (Bankr. N.D. Ga. 2017) (Sacca, J.).

Ultimately, the sole public interest factor cited by GCube in support of the Motion—the familiarity of the New York courts with New York law—is outweighed by the above-outlined public interest factors. Federal bankruptcy courts and district courts routinely interpret and apply state law. The parties have not suggested that the Claims involve novel state law issues. Since the court concludes that the Underwriters bear the burden of showing that dismissal is in the interests of justice, and the public interest factors weigh against dismissal, the Motion is due to be denied.

17

**D. As a matter of contract interpretation, the Certificate forecloses dismissal of the AP as a means to enforce the Jurisdiction Clause in its present procedural posture.**

Employing contract interpretation analysis does not change the result. As the above discussion highlights, the Service of Suit Clauses and the Jurisdiction Clause conflict. The Jurisdiction Clause "mandates New York as the exclusive jurisdiction, while the [Service of Suit Clauses] state[] the [Underwriters] will submit to the jurisdiction of any competent court and accept its final decision." *See Rembrandt Enters., Inc. v. Illinois Union Ins. Co.*, 129 F. Supp. 3d 782, 786 (D. Minn. 2015) (Kyle, J.).

Other courts have recognized this apparent conflict. *See id.*; *Tri-Union Seafoods*, 88 F. Supp. 3d at 1163-64 ("[T]he forum selection clause provides for New York as the designated forum, whereas the Service of Suit Endorsement unambiguously permits Plaintiff, as the policy holder, to choose the forum to bring suit. Thus, when read separately and in isolation, the two provisions appear to conflict."); *Hazelwood Logistics*, 2014 WL 805886, at *2. In the aforementioned cases, the courts relied on priority of provision clauses to give greater effect to the service of suit clauses. *See Rembrandt Enters.*, 129 F. Supp. 3d at 786; *Tri-Union Seafoods*, 88 F. Supp. 3d at 1164-65; *Hazelwood Logistics*, 2014 WL 805886, at *2.

The Priority of Provision Clause does not resolve the instant conflict. First, the Certificate does not include a clearly delineated "Policy Schedule," nor are any portions of the Certificate labeled "endorsements." (*See* Certificate, *passim.*) As such, it is not clear that the Jurisdiction Clause or the First Service of Suit Clause is located in a portion of the Certificate that is given priority over the General Conditions. Second, only the Second Service of Suit Clause appears in the General Conditions, not the first. (*See* Certificate at 13-18.) Thus, even if the Second Service of Suit Clause might be superseded in some respects by virtue of the fact that it is part of the General Conditions, the Priority of Provision Clause does not reconcile the conflict between the Jurisdiction Clause and the First Service of Suit Clause.

Because the Priority of Provision Clause does not aid in reconciling the competing "jurisdiction" clauses, the court looks to general principles of contract interpretation.[34] The principals that guide the analysis are substantially the same under federal and New York state law. When confronted by two seemingly conflicting contract provisions, the court must reconcile the provisions to give both effect. *See Guaranty Fin. Servs., Inc. v. Ryan*, 928 F.2d 994, 999-1000 (11th Cir. 1991) ("[A]n interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions meaningless; nor should any provision be construed as being in conflict with another unless no other reasonable interpretation is possible.") (internal citation omitted); *HSBC Bank USA v. Nat'l Equity Corp.*, 719 N.Y.S.2d 20, 22 (N.Y. App. Div. 2001) ("[W]here two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect.") (internal citation omitted). The court should look to the contract as a whole and avoid an interpretation that would leave contractual clauses meaningless. *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011) ("The court must look at the contract as a whole, the parties, and the purpose of the agreement to best determine the intent of the parties in interpreting the agreement."); *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1058 (11th Cir. 1998) ("[A]n interpretation which gives a reasonable, lawful and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect") (internal citation omitted);

---

[34] *See CIS Fin. Servs., Inc.*, 2014 WL 1234153, at *3-4; *see also Dornoch Ltd. v. PBM Holdings, Inc.*, 666 F. Supp. 2d 366, 370 (S.D.N.Y. 2009) (Rakoff, J.).

*Nat'l Conversion Corp. v. Cedar Bldg. Corp.*, 23 N.Y.2d 621, 625 (N.Y. 1969) ("All parts of an agreement are to be reconciled, if possible, in order to avoid inconsistency."); *150 Broadway N.Y. Assocs., L.P. v. Bodner*, 784 N.Y.S.2d 63, 66 (N.Y. App. Div. 2004) ("It is a cardinal rule of contract construction that a court should avoid an interpretation that would leave contractual clauses meaningless. Stated otherwise, courts are obliged to interpret a contract so as to give meaning to all of its terms.") (internal citations omitted).

To the extent that there are two reasonable interpretations of the Insurance's forum selection clauses, the court must construe the contract provisions against the drafter and select the interpretation more favorable to the non-drafting party. *See Global Satellite Commc'n Co.*, 378 F.3d at 1274 ("The phrase is simply ambiguous, it lends itself to several possible reasonable interpretations, and rather than strain to find that one should prevail over another, we must simply construe it against . . . the drafter."); *Majer v. Schmidt*, 169 A.D.2d 501, 505 (N.Y. App. Div. 1999) ("Contrary to [the defendant's] assertions, the forum selection clause . . . did not designate Zurich, Switzerland, as the sole proper venue of the underlying action, but, rather, contained ambiguous language, which must be construed against the drafter . . . and in favor of the [plaintiff's] selected forum").[35] Similarly, ambiguities in insurance contracts are resolved in favor of the insured and against the insurer. *See Great Lakes Reinsurance (UK) PLC v. Vasquez*, 341 Fed. App'x 515, 517-18 (11th Cir. 2009) (applying New York law); *Dean v. Tower Ins. Co. of N.Y.*, 19 N.Y.3d 704, 708 (N.Y. 2012) ("[A]mbiguities in an insurance policy are to be construed against the insurer.") (quoting *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 353 (N.Y. 1978)).

Applying the above-referenced principles, the court agrees with the Underwriters that the Service of Suit Clauses do not foreclose enforcement of the Jurisdiction Clause. However, the court disagrees with the Underwriters that dismissal is an available mechanism for enforcement of the Jurisdiction Clause, as the Service of Suit Clauses do not reserve to the Underwriters the contractual right to dismiss an action filed in court of competent jurisdiction in the United States. In other words, the Service of Suit Clauses alter the effect of the Jurisdiction Clause in two significant (but limited) ways. First the Service of Suit Clauses authorize Veros to commence litigation in a forum other than New York (provided its claims fall within the scope of the Service of Suit Clauses). Second, the Service of Suit Clauses operate to waive the Underwriters' private interest challenges to Veros's chosen forum when (1) the litigation cannot be transferred to the state court forum selected by the Jurisdiction Clause, and (2) the Underwriters elect not to (or are otherwise foreclosed from) commencing their own action in said state court forum.

---

[35] Under New York law, if a court determines that an agreement is ambiguous, the court may consider extrinsic evidence of the parties' intent to resolve the ambiguity. *See, e.g., Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569-570 (N.Y. 2002). When the parties do not offer extrinsic evidence, or the evidence offered is not probative, New York law construes the ambiguity against the drafting party. *See, e.g., State of New York v. Home Indem. Co.*, 66 N.Y.2d 669, 671 (N.Y. 1985) ("Generally, the courts bear the responsibility of determining the rights or obligations of parties under insurance contracts based on the specific language of the policies. If, however, the language in the insurance contract is ambiguous and susceptible of two reasonable interpretations, the parties may submit extrinsic evidence as an aid in construction, and the resolution of the ambiguity is for the trier of fact. On the other hand, if the tendered extrinsic evidence is itself conclusory and will not resolve the equivocality of the language of the contract, the issue remains a question of law for the court. Under those circumstances, the ambiguity must be resolved against the insurer which drafted the contract.") (internal citations omitted); *Kenavan v. Empire Blue Cross & Blue Shield*, 248 A.D.2d 42, 47 (N.Y. App. Div. 1998) ("Thus, when the insurer fails to submit extrinsic evidence that resolves the ambiguity, the proper interpretation is an issue of law for the court and the ambiguity must be resolved against the drafter of the contract, the insurer.") (internal citation omitted). Neither party offered extrinsic evidence of the parties' intent.

19

Notably, the Jurisdiction Clause likewise limits the effect of the Service of Suit Clauses. The Certificate provisions that pertain to the Underwriters' rights of removal, transfer, and commencement of a suit in "any" court of competent jurisdiction are not complete reservations of rights. The Service of Suit Clauses merely say that nothing in the Service of Suit Clauses should be construed as waiving such rights. (*See* Certificate at 8, 17.) Because the Jurisdiction Clause selects the New York state courts only, (if enforceable) it necessarily restricts the Underwriters from removing to a federal forum, transferring litigation from one federal forum to another, and commencing suit in a federal forum or state court forum outside of New York. Read together, the clauses leave one option to the Underwriters if they elect to proceed in New York state court—the Underwriters must file suit in a New York state court.

This interpretation gives effect to all of the "jurisdiction" clauses, by recognizing that the Service of Suit Clauses do not foreclose the Underwriters from compelling litigation in New York state court, without nullifying the limited territorial consent memorialized in the Service of Suit Clauses. To the extent there are alternate, reasonable interpretations of the provisions, the court adopts the foregoing interpretation as more favorable to the insured.

The *Dornoch* case cited by the Underwriters in support of their alternative interpretation is distinguishable. 666 F. Supp. 2d at 366. In *Dornoch*, the underwriters filed a declaratory judgment action in the SDNY. The insured moved to dismiss the underwriters' action (or to transfer the action) on the basis that the insured had previously filed suit in federal court in Virginia. To support its motion to dismiss or transfer, the insured pointed to a service of suit clause in the parties' agreement, which provided that the underwriters consented "to the jurisdiction of a Court of competent jurisdiction within the United States." *Id.* at 370. The plaintiff underwriters defended, relying on a mandatory venue provision in the contract.

First, the contractual language in *Dornoch* differs from that of the Certificate. The "mandatory" provision at issue in *Dornoch* specifically stated that "any action relating to any dispute under this Policy shall only be brought in" the state and federal courts in New York. The Jurisdiction Clause, on the other hand, refers to "jurisdiction" (like the Service of Suit Clauses), stating "disputes . . . shall be subject to the exclusive jurisdiction" of the New York state courts. The *Dornoch* court did not have to reconcile competing uses of the term "jurisdiction." As such, in *Dornoch*, the inclusion of a separate provision conferring personal jurisdiction over the underwriters in the United States (and subjecting the underwriters to service of suit in the United States) could therefore be reconciled with the forum selection clause, which spoke only to venue. Unlike *Dornoch*, the Underwriters' preferred interpretation of the Certificate requires the court to read "jurisdiction" differently in the Jurisdiction Clause than in the Service of Suit Clauses—giving it territorial and personal effect in the former but only personal effect in the latter. To the extent that the language "submit to jurisdiction" is ambiguous, both federal and New York state law require the court to construe the ambiguity against the drafter. *See Global Satellite Commc'n Co.*, 378 F.3d at 1274 (finding the phrase "submit to the jurisdiction" of the chosen venue "simply ambiguous" and construing the forum selection clause against the drafter); *Majer*, 169 A.D.2d at 505. Had the Underwriters intended to limit their "consent to jurisdiction" to personal jurisdiction, they could have done so.

Second, *Dornoch* did not involve a determination as to whether the insured's first filed suit was subject to dismissal. As noted above, the court does not construe the Service of Suit clauses as waiving the right of the Underwriters to file suit in New York state court (the contractually selected forum), and the Service of Suit Clauses would not require dismissal of any such suit.

20

The arbitration cases cited by the Underwriters also do not compel a different result. Courts that have declined to find a conflict between arbitration clauses and service of suit clauses typically hold that enforcement of a mandatory arbitration provision does not leave the service of suit clause without meaning, as the service of suit clause makes certain that the insured will have recourse to a United States federal or state court to enforce any arbitration award entered in its favor. *See, e.g., McDermott Int'l, Inc. v. Lloyd's Underwriters of London*, 944 F.2d 1199, 1205 (5th Cir. 1991), *reh'g denied*, 947 F.2d 1489 (5th Cir. 1991). The courts emphasize that such a ruling gives effect both to the insured's waiver of a judicial forum for deciding disputes (evidenced by the arbitration provision) and the underwriters' consent to jurisdiction in a judicial forum when they have refused to pay amounts claimed due under the policy (evidenced by the service of suit clause). *See, e.g., McDermott Int'l*, 944 F.2d at 1204-06, 1208. Here, of course, Veros did not waive its right to adjudicate its claims in a judicial forum, and there is no need to preserve a United States judicial forum to enforce the decision of another United States judicial forum. Further, the courts are not unanimous in holding that service of suit provisions do not conflict with arbitration provisions. *See, e.g., Transit Cas. Co.*, 963 S.W. 2d at 397-99; *Thiokol Corp. v. Certain Underwriters at Lloyd's, London*, No. 1:96-CV-28, 1997 WL 33798359, at *3-5 (D. Utah May 6, 1997) (Benson, J.) (applying principles of contract interpretation to resolve a conflict between a service of suit provision and an arbitration provision to hold that the more specific service of suit provision gave the insured an explicit right to bypass the more general arbitration provision).[36]

There are numerous cases in which Lloyd's and its syndicates have litigated the meaning of Lloyd's service of suit clauses. These reported cases span more than 67 years. The addition of a sentence reserving the rights of removal, transfer, and commencement of a separate suit to Lloyd's form service of suit clause appears to have been a direct response to the courts' construction of service of suit clauses as venue provisions that waive such rights. Lloyd's could have similarly reserved its right to dismiss or modified the text of the service of suit clause to make clear that the reference to "jurisdiction" in the service of suit clauses is limited to personal jurisdiction. It did not do so, and, thus, the court will construe the ambiguity against the insurers.[37]

Ultimately, when reconciled with the Service of Suit Clauses, the Jurisdiction Clause does not apply to the Claims in their present procedural posture. Accordingly, the Motion is due to be denied—regardless of whether the Jurisdiction Clause is valid, enforceable, or entitled to near determinative weight in a *forum non conveniens* analysis. Because the Plan continued the Estate in effect post-confirmation, the Underwriters are stayed, by operation of 11 U.S.C. § 362, from commencing an action in New York state court to obtain a declaration that they are not liable on the Claims. *See* 11 U.S.C. §§ 362(a)(1), (a)(3), (c)(1), (c)(2).[38] The fact that Veros's bankruptcy filing resulted in imposition

---

[36] Judge Benson observed: "If Lloyd's—one of the largest and most experienced insurance underwriters in history—wanted to make its own boilerplate service of suit clause only an 'aid to arbitration,' it could have employed simple English words to say so. Regardless of the soundness of *Brooke Group* and the other cases cited by Lloyd's, however, as discussed throughout this opinion, Lloyd's in this case has failed to demonstrate through the plain language of the contract or otherwise that the parties intended the more specific service of suit clause to be subservient to the general arbitration clause in the precise situation outlined in the service of suit clause." *Thiokol Corp.*, 1997 WL 33798359, at *5, n.3.

[37] *See Perini Corp. v. Orion Ins. Co.*, 331 F. Supp. 453, 455 (E.D. Cal. 1971) (MacBride, C.J.) ("If the courts have misconstrued the clause, Lloyd's has had ample opportunity to invoke the ultimate remedy, the drafter's pen. Until the clause is changed, therefore, the parties are entitled to expect that the clause now means what it has always meant.").

[38] The Plan also contains an injunction permanently enjoining "all persons who have held, currently hold or may hold a debt, claim or interest satisfied pursuant to the terms of this Plan" from "commencing or continuing in any manner any action or other proceeding" against Veros. *See* Plan Art. VI, § 6.7. The Underwriters dispute that they are "creditors," and

21

of a stay as a matter of federal law has no bearing on the court's contract interpretation analysis. Furthermore, GCube has known about the Bankruptcy Case since April 2015 (when it sent its nonrenewal notice), and has never moved for stay relief or otherwise appeared in the Bankruptcy Case—notwithstanding the court's ruling that its nonrenewal notice violated the automatic stay, Veros's disclosure of its Claims and its stated intent to pursue the Claims in this court, and this court's retention of jurisdiction to hear the Claims. The court will not require Veros to file suit on the Claims in another forum when the parties' agreement and the confirmed Plan and Disclosure Statement permit litigation in this forum and the Underwriters have not given any indication that they intend to pursue the contractually preserved mechanism for litigating in New York state court.[39]

## CONCLUSION

For the reasons set forth herein, the request to dismiss the AP is due to be denied.[40] As transfer was offered only as a consensual alternative to dismissal, the request to transfer venue of the AP also is due to be denied. The court will enter a separate order denying the Motion.

DATED this the 26th day of April, 2018.

/s/ JENNIFER H. HENDERSON
UNITED STATES BANKRUPTCY JUDGE

---

argue, therefore, they are not bound by the Plan. It is not disputed that the Underwriters are not creditors of Veros at this time. (Joint Stipulations at 3). Pursuant to the Certificate, GCube held a claim against Veros on the Petition date for the premium due, and, therefore, was a creditor of the Estate on the Petition date. (*See* Certificate at 2, 8, 14, 16.) *See also* 11 U.S.C. § 101(5)(a) (defining "claim" as a "right to payment, whether or not…liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured"); *id.* § 101(10) (defining "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the [Petition date]"). However, GCube's claim was paid in full, pursuant to the terms of court's order on its nonrenewal notice, pre-confirmation. (*See* AP Doc. 48 at 3; BK Doc. 91; BK Doc. 108, Bank Reconciliations.) The Bankruptcy Code provides that "the provisions of a confirmed plan bind…any creditor…whether or not the claim…of such creditor…is impaired under the plan and whether or not such creditor…has accepted the plan." 11 U.S.C. § 1141(a). The court does not reach the issue of whether the post-Petition, pre-confirmation payment of GCube's pre-Petition claim renders the Plan injunction inapplicable to it.

[39] This memorandum opinion and the related order are without prejudice to the right of any Underwriter to move for relief from the stay. The court will not predetermine whether or not any Underwriter would be entitled to relief from stay, as that issue is not before the court.

[40] In the Motion the Underwriters cite Rule 12(b)(6) of the Federal Rules of Civil Procedure to support their request for dismissal of the AP, alleging that Veros contractually waived its right to file suit in this court. Rule 12(b)(6) is made applicable to adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. To the extent Rule 12(b)(6) might serve as an alternative basis for dismissal of the AP (and to the extent the Underwriters did not waive this ground for relief by stipulation), the Rule 12(b)(6) request is likewise due to be denied. The Service of Suit Clauses expressly authorized Veros to file suit in any court of competent jurisdiction in the United States. This court has subject matter jurisdiction to hear the claims. *See* Jurisdiction section *supra*. There is no dispute that the Service of Suit clauses give this court personal jurisdiction over the Underwriters. Venue of the AP is proper in this court pursuant to 28 U.S.C. § 1409. Accordingly, even if the Jurisdiction Clause is enforceable (which Veros disputes), the movants' Rule 12(b)(6) motion is due to be denied, as the alleged waiver is not apparent from the face of the complaint. *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).") (internal citations omitted).