# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **In re:** ) | |
| ) | |
| **VEROS ENERGY, LLC,** ) | **BK No. 15-70470-JHH11** |
| ) | |
| Debtor. ) | |

| | |
|---|---|
| **VEROS ENERGY, LLC,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **AP No. 16-70021-JHH** |
| ) | |
| **GCUBE INSURANCE SERVICES, INC.** and ) | |
| **KILN SYNDICATE 510,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on the defendants' motion to stay all proceedings related to the AP[1] (AP Doc. 106) (the "Motion for Stay"). The Motion for Stay is brought pursuant to Rule 8007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and requests a stay of all proceedings in the AP pending resolution of the defendants' appeal of this court's order (AP Doc. 97) (the "Venue Order") denying their motion to dismiss or transfer venue of the AP (AP Doc. 13) (the "Venue Motion"). The plaintiff opposes the relief requested in the Motion for Stay. (*See* AP Doc. 110.) The court held an evidentiary hearing on the Motion for Stay on May 29, 2018 (the "Stay Hearing"). Appearances were noted on the record of the Stay Hearing. No evidence was offered in support of the Motion for Stay other than the Jurisdiction Clause in the Certificate. Based on the filings, evidence, arguments and representation of counsel, and all other matters before the court, and for the reasons stated on the record of the Stay Hearing (which are incorporated by reference) and those set forth below, the Motion for Stay is due to be denied, without prejudice.

## BACKGROUND AND PROCEDURAL POSTURE

### A.     The Appeal

On April 26, 2018, this court entered the Venue Order, denying the relief requested by GCube and Kiln in the Venue Motion based on the findings of fact, stipulations, analysis, and legal

---

[1] Capitalized terms used herein and not otherwise defined have the meanings ascribed to them in this court's April 26, 2018 memorandum opinion (AP Doc. 96) (the "Venue Opinion").

1

conclusions set forth in the Venue Opinion.  (*See* Venue Order, *passim*; Venue Opinion, *passim*.)  The findings of fact and stipulations relevant to this court's analysis and legal conclusions are set forth on pages one through eight of the Venue Opinion and need not be reiterated herein.  Among other things this court concluded:  (1) the Service of Suit Clauses are properly characterized as limited consents to litigate in Veros's chosen forum under both New York state law and federal law;[2] (2) even if they are merely permissive forum provisions, the Service of Suit Clauses are entitled to weight in a *forum non conveniens* analysis;[3] (3) the existence of multiple forum provisions alters the post-*Atlantic Marine*,[4] *forum non conveniens* analysis;[5] and (4) under the modified analysis, the Underwriters are not entitled to dismissal of the AP, as public interest factors weigh against dismissal.[6]

As an alternative basis for the court's denial of the Underwriters' request to dismiss the AP for *forum non conveniens*, the court concluded, as a matter of contract interpretation, that the Jurisdiction Clause does not apply to the Claims in their present procedural posture, and, therefore, dismissal is not appropriate (since the truncated *Atlantic Marine* analysis does not apply and there is no dispute that dismissal is not warranted under a traditional *forum non conveniens* analysis).[7]  The court's contract interpretation analysis considered principals of contract interpretation under both New York law and federal law and concluded that the applicable principals were substantially the same.[8]

Because the Jurisdiction Clause that the Underwriters seek to enforce provides for jurisdiction in the New York state courts, not the New York federal courts, and because the Underwriters made no showing that transfer to the SDNY was otherwise appropriate, the Underwriters' alternative request to transfer venue of the AP to the SDNY also was denied.[9]

Although raised on the record of the Hearings or in the Venue Filings, the court did not reach the following issues (or, for those issues that present mixed questions of law and fact, include in its Venue Opinion the factual findings and stipulations necessary to resolve the issues):  (1) whether the court, in construing the Service of Suit Clauses, must apply New York law or federal law;[10] (2) whether the Claims in the AP are core or non-core;[11] (3) whether enforcement of the Jurisdiction Clause would contravene federal public policy;[12] (4) whether the Underwriters are bound by the terms of the Plan under 11 U.S.C. § 1141;[13] (5) whether the Alabama federal courts have exclusive jurisdiction of the Claims under the terms of the Plan (or the retention of jurisdiction provision in the Plan otherwise

---

[2] (Venue Opinion at 12-15.)
[3] (*Id.* at 15-16.)
[4] *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49 (2013).
[5] (*Id.* at 16-17.)
[6] (*Id.*)
[7] (*Id.* at 18-22.)
[8] (*Id.* at 18-19.)
[9] (*Id.* at 7, 22, n. 33.)
[10] (*Id.* at 7, n. 23.)
[11] (*Id.* at 9-10.)
[12] (*Id.* at 3, n. 31.)
[13] (*Id.* at n. 38.)

modifies the Certificate);[14] (6) whether the Plan otherwise enjoins litigation of the Claims in New York;[15] and (7) whether the Alabama federal courts have exclusive jurisdiction of the Claims under 28 U.S.C. § 1334(e).[16]

Within the time prescribed by Bankruptcy Rule 8002(a)(1), GCube and Kiln filed a notice of appeal of the Venue Order (AP Doc. 101) (the "Notice of Appeal") along with a motion for leave to appeal (AP Doc. 102) (the "Motion for Interlocutory Appeal"), pursuant to Bankruptcy Rule 8004 and 28 U.S.C. § 158(a)(3). The Motion for Interlocutory Appeal presents five questions:

(1)    Did this court err in characterizing the Service of Suit Clauses as forum selection clauses that conflict with the Jurisdiction Clause?

(2)    Did this court err in ruling that the Service of Suit Clauses permit the AP to be litigated in an Alabama federal court?

(3)    Did this court err in concluding that the Underwriters "waived their rights to seek dismissal of" the AP?

(4)    Did this court err in applying a *forum non conveniens* analysis notwithstanding the Jurisdiction Clause and *Atlantic Marine*?[17]

(5)    Did the court err in concluding that, as a matter of contract interpretation, the Service of Suit Clauses foreclosed dismissal of the AP as a means to enforce the Jurisdiction Clause?

The court disagrees with the movants' characterizations of certain of its holdings. The court did not, for instance, hold that the Underwriters had waived the right to seek dismissal of the AP. (*See* Venue Opinion, *passim*.) In fact, the Venue Opinion expressly concludes that a party cannot contractually waive a right to dismiss for *forum non conveniens* on public interest grounds. (*See* Venue Opinion at 13.) Instead, the court held that since the Underwriters had not commenced their own suit in New York state court, the Court could not (applying well settled principals of contract interpretation and construing the Certificate as a whole) construe the Certificate as giving the Underwriters the contractual right to dismiss the AP under the Jurisdiction Clause without rendering the Service of Suit Clauses meaningless. (*See id.* at 19-20.) Adopting the reasonable reconciliation of

---

[14] (*Id.* at n. 3.)
[15] (*Id.* at n. 3, n. 38.)
[16] (*Id.* at n. 3.)
[17] As *Atlantic Marine* provides that a motion to dismiss for *forum non conveniens* is the appropriate mechanism for enforcement of a forum clause that selects a non-federal forum (*see* 571 U.S. at 60), and the parties stipulate that the Jurisdiction Clause selects a state court forum and, therefore, that dismissal for *forum non conveniens* is the appropriate mechanism for compelling compliance with the Jurisdiction Clause (*see* Venue Opinion at 6-7), the court interprets this question slightly differently than it is phrased. The court assumes the movants take issue with how the court conducted its *forum non conveniens* analysis—not with the court's conclusion that the doctrine of *forum non conveniens* applies—and argue that, under the truncated, *Atlantic Marine* analysis, they are entitled to prevail on their request to dismiss the AP for *forum non conveniens*.

3

the conflicting "jurisdiction" clauses most favorable to the insured (Veros), the court determined that, given the procedural posture of the Claims, the Service of Suit Clauses operated as a very limited exception to the Jurisdiction Clause. (*See id.* at 18-22.)

Setting aside the movants' framing of the questions on appeal, the crux of GCube and Kiln's argument is that this court erroneously "equated" the Service of Suit Clauses with the Jurisdiction Clause and failed to give effect to "well-settled" New York law construing a service of suit clause as "no more than a consent to personal jurisdiction." (*See* Motion for Interlocutory Appeal at 9-10.) GCube and Kiln posit that had the court properly treated the Services of Suit Clauses as consents to personal jurisdiction only, then the court necessarily would have reconciled the "jurisdiction" provisions in the Certificate differently and found that the Certificate unambiguously requires litigation of the Claims to proceed in New York state court. (*See id.* at 8-10.) Relying on their interpretation of the Certificate provisions, GCube and Kiln maintain that the court did not give due weight to the Jurisdiction Clause in its *forum non conveniens* analysis (as the court gave limited effect to the clause under its modified *Atlantic Marine* analysis and, in its alternative contract interpretation analysis, the court employed a traditional *forum non conveniens* analysis based on its finding that the Claims were not subject to the Jurisdiction Clause). (*Id.*)

Ultimately, the appeal rises and falls on whether the court erred in both its construction of the Service of Suit Clauses and its reconciliation of the three "jurisdiction" clauses in the Certificate. If GCube and Kiln are correct that the Certificate mandates, without exception, that Veros file the Claims in New York state court and that the Services of Suit Clauses are not properly characterized as at least permissive forum provisions, then the court's *forum non conveniens* analyses were flawed (provided the Jurisdiction Clause is enforceable). There is no question that the truncated *Atlantic Marine* analysis applies if the Certificate contains a single, valid (and enforceable) forum selection clause that mandates litigation of the Claims in New York state court. (*See* Venue Opinion at 10-12.) Conversely, if the Service of Suit Clauses are properly characterized as forum provisions, or the Service of Suit Clauses otherwise limit application of the Jurisdiction Clause to the Claims in their present procedural posture, the movants do not provide any basis for concluding that both of the court's alternative, *forum non conveniens* analyses were wrongly decided.

Veros opposes the Motion for Interlocutory Appeal. (*See* AP Doc. 109.) The Motion for Interlocutory Appeal presently is pending before the District Court. A little more than a week after filing the Motion for Interlocutory Appeal, GCube and Kiln filed their answer in the AP (AP Doc. 105) (the "Answer") and the Motion for Stay.

**B.     The Motion to Withdraw**

Also pending before the District Court is the Motion to Withdraw, in which GCube and Kiln, pursuant to 28 U.S.C. § 157(d), request that the District Court withdraw the reference of the AP to this court—the court where Veros filed its Bankruptcy Case and where the Bankruptcy Case remains

4

pending—for cause. Although the Motion to Withdraw alludes to the possibility of a jury trial in the AP (*see* Motion to Withdraw at 10), to date no party has made a jury demand. (*See* AP Doc. 1, *passim*; Answer, *passim*; *see also* AP Doc. 89; AP Docket, *passim*.) Further, although the Motion to Withdraw suggests that the District Court would have a basis for exercising federal jurisdiction over the Claims other than 28 U.S.C. § 1334 bankruptcy jurisdiction (*see* Motion to Withdraw at 15-16), to date there has been no such showing. (*See* Venue Opinion, n. 24; *see also* Answer, *passim*.) As such, the Motion to Withdraw appears premised, in large part, on GCube and Kiln's assertion that the Claims are non-core, or are properly characterized as *Stern* claims (*see* Venue Opinion, n. 27), and the fact that GCube and Kiln state that they do not consent (and have not previously consented) to the entry of final orders by this court. If the District Court concludes that the Claims are non-core (or are *Stern* claims) but does not find cause to grant the Motion to Withdraw, the effect of such a decision simply will be that this court may hear the AP but, absent the parties' consent, must submit proposed findings and conclusions of law to the District Court, subject to de novo review.[18] If the District Court grants the Motion to Withdraw and withdraws the reference of the AP (in full), the District Court will become the trial court and will hear all further matters in the AP.

C.     The Bankruptcy Rule 5011 Stay of the AP

With Veros's consent (*see* AP Doc. 26), the court entered an order pursuant to Bankruptcy Rule 5011(c) (AP Doc. 35) (the "Initial Stay Order"), granting, in part, GCube and Kiln's motion to stay proceedings in the AP (AP Doc. 12) pending the District Court's adjudication of the Motion to Withdraw. The Initial Stay Order stayed all proceedings in the AP other than proceedings on the Venue Motion. (*See* Initial Stay Order, *passim*). Veros subsequently moved for relief from the Initial Stay Order so that the parties could proceed with discovery on the Claims while the parties litigated the issues pertaining to where the trial of the Claims will take place—this court, the District Court, or a New York state or federal court. (*See* AP Doc. 70, *passim*.) Veros did not request that the court lift the stay of the AP in its entirety. (*See id.*)

In their filings with the court regarding the continuation of the Bankruptcy Rule 5011 stay of the AP, GCube and Kiln opposed the commencement of discovery prior to their filing an answer to Veros's complaint in the AP and also took issue with being required to answer before their time to appeal the Venue Order had expired. (*See* AP Doc. 75, *passim*; AP Doc. 84, *passim*.) Accordingly, the court's orders lifting the stay of the AP, in part, to allow discovery to proceed in accordance with the Bankruptcy Rules allowed GCube more than 14 days after the entry of the Venue Order to answer the complaint and set a scheduling conference to discuss the parties' discovery plan more than three weeks after the court-ordered answer deadline (the "Scheduling Conference"). (*See* AP Docs. 78, 88.) The court advised the parties that the court would not set the AP for trial or set a dispositive motion deadline at the Scheduling Conference if the Motion to Withdraw remained pending at the time of the

---

[18] *See* 28 U.S.C. § 157(c). If the Claims are core and are not *Stern* claims, any decision of this court would be subject to normal appellate review. *See* 28 U.S.C. § 157(b)(1).

5

Scheduling Conference. The Scheduling Conference is scheduled to take place in approximately two weeks.

## JURISDICTION AND VENUE

The Court has jurisdiction over the AP and the Motion for Stay pursuant to 28 U.S.C. § 1334(b). (*See* Venue Opinion at 8-10.) Venue of the Bankruptcy Case, the AP, and the Motion for Stay is proper before the court under 28 U.S.C. §§ 1408 and 1409. Although the Motion for Stay alleges that venue of the AP is improper because of the Jurisdiction Clause,[19] "[i]f the federal venue statutes establish that suit may be brought in a particular district, a contractual bar cannot render venue in that district 'wrong.'" *Atlantic Marine*, 571 U.S. at 58.

## DISCUSSION

A Bankruptcy Rule 8007(a) stay pending appeal "is an 'extraordinary remedy' and the party seeking it must show: '(1) a substantial likelihood that they will prevail on the merits of the appeal; (2) a substantial risk of irreparable injury to the[m] unless the [stay] is granted; (3) no substantial harm to other interested persons; and (4) no harm to the public interest.'" *In re Woide*, __ Fed. App'x __, 2018 WL 1633550, at *4 (11th Cir. Apr. 5, 2018) (quoting *Touchston v. McDermott*, 234 F.3d 1130, 1132 (11th Cir. 2000); *see also Garcia-Mir v. Meese*, 781 F.2d 1450, 1453-55 (11th Cir. 1986) (discussing the standard for stay pending appeal under Rule 8(a) of the Federal Rules of Appellate Procedure). Here, each factor weighs against granting a stay.

**A.      Likelihood of Success on the Merits**

Typically, this first factor is considered the most important in evaluating whether a stay pending appeal is appropriate. *Garcia-Mir*, 781 F.2d at 1453. "Where, as here, the order being appealed is interlocutory, the relevant 'likelihood of success' looks to whether 'the District Court will grant the [movants] leave to file an interlocutory appeal, not the possibility that the [movants] will succeed on the merits of that appeal.'" *In re Frascella Enterprises, Inc.*, 388 B.R. 619, 623 (Bankr. E.D. Pa. 2008) (Sigmund, J.) (citing *Enron Corp. v. J.P. Morgan Securities* (*In re Enron*), 2006 WL 2400411, at *1 (Bankr. S.D.N.Y. May 10, 2006) (Gonzalez, J.)).

Pursuant to 28 U.S.C. § 158(a), the District Court has jurisdiction to hear appeals from interlocutory orders of this court, provided leave is granted. *See* 28 U.S.C. § 158(a)(3). Section 158(c) dictates that an appeal under § 158(c) "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provide for Rule 8002 of the Bankruptcy Rules." 28 U.S.C. § 158(c)(2).

---

[19] The Motion for Interlocutory Appeal avers that this court "is the improper venue to litigate claim [*sic*] arising under the Policy" and that failure to grant interlocutory review will "result in litigating this matter in an improper forum." (*See* Motion for Interlocutory Appeal at 4, 11.)

6

Section 1291 of title 28 provides that courts of appeals have jurisdiction over appeals from "final decisions of the district courts of the United States." 28 U.S.C. § 1291; *see also Lauro Lines s.r.l v. Chasser*, 490 U.S. 495, 497 (1989). The federal courts recognize a "narrow exception to normal application of the final judgment rule, which has come to be known as the collateral order doctrine." *See Midland Asphalt Corp. v. U.S.*, 489 U.S. 794, 798 (1989). Under the collateral order doctrine, a non-final order is appealable as a matter of right if it "finally determine[s] claims of right separable from, and collateral to, rights asserted in the action" that are "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). The Supreme Court of the United States has considered and rejected the argument that an order denying a dismissal motion based on a contractual forum selection clause is reviewable under the collateral order doctrine. *See Lauro Lines*, 490 U.S. at 500-01. In so holding, the Court explained:

> If it is eventually decided that the District Court erred in allowing trial in this case to take place in New York, petitioner will have been put to unnecessary trouble and expense, and the value of its contractual right to an Italian forum will have been diminished. It is always true, however, that "there is value ... in triumphing before trial, rather than after it," [*U.S. v.*] *MacDonald*, [435 U.S. 850,] 860, n. 7, 98 S. Ct. [1547,] 1553, n. 7 [(1978)], and this Court has declined to find the costs associated with unnecessary litigation to be enough to warrant allowing the immediate appeal of a pretrial order, see *Richardson–Merrell Inc.* [*v. Koller*], 472 U.S. [424], 436, 105 S.Ct. [2757], 2764 [(1985)] ("[T]he possibility that a ruling may be erroneous and may impose additional litigation expense is not sufficient to set aside the finality requirement imposed by Congress" in § 1291). Instead, we have insisted that the right asserted be one that is essentially destroyed if its vindication must be postponed until trial is completed.
>
> . . .
>
> [P]etitioner is obviously not entitled under the forum-selection clause of its contract to avoid suit altogether, and an entitlement to avoid suit is different in kind from an entitlement to be sued only in a particular forum. Petitioner's claim that it may be sued only in Naples, while not perfectly secured by appeal after final judgment, is adequately vindicable at that stage—surely as effectively vindicable as a claim that the trial court lacked personal jurisdiction over the defendant—and hence does not fall within the third prong of the collateral order doctrine.

*Lauro Lines*, 490 U.S. at 499, 501. In his concurrence, Justice Scalia went on to state, "The reason we say that the right not to be sued elsewhere than in Naples is 'adequately vindicable,'... by merely reversing any judgment obtained in violation of it is, quite simply, that the law does not deem the right important enough to be vindicated by, as it were, an injunction against its violation obtained through interlocutory appeal." *Id.* at 502.

As the Venue Order is not appealable as a matter of right, the relevant inquiry is whether discretionary, interlocutory review of the order is appropriate under 28 U.S.C. § 1292(b). *See, e.g., Stenger Industries, Inc. v. Int'l Ins. Co.*, 74 B.R. 1017, 1019 (N.D. Ga. 1987) (Hall, J.) ("The statute governing interlocutory appeals is 28 U.S.C. § 1292(b) which is made applicable to this proceeding by 28 U.S.C. § 158(c)."). The only notable distinction in the standard to be employed under 28 U.S.C. § 1292(b) and that to be employed under 28 U.S.C. § 158(c) is that certification by this court is not required for the District Court to hear an appeal from an interlocutory order of this court. *See, e.g., In re Bertoli*, 812 F.2d 136, 138-40 (3rd Cir. 1987); *see also In re Dixie Broadcasting, Inc.*, 871 F.2d 1023, 1028 (11th Cir. 1989) (citing *Bertoli* for this proposition).

Section 1292(b) provides for appeals of interlocutory order when the order "involves a controlling question of law as to which there is a substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). For a question to be a "controlling question of law" it must typically be a question "'of the meaning of a statutory or constitutional provision, regulation, or common law doctrine.'" *McFarlin v. Conseco Services, LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004) (quoting *Ahrenholz v. Board of Trustees of the University of Illinois*, 219 F.3d 674, 677 (7th Cir. 2000)). "The term 'question of law' does not mean the application of settled law to fact." *Id.* "It does not mean any question the decision of which requires rooting through the record in search of the facts or of genuine issues of fact." *Id.* The question should be an "abstract legal issue or what might be called one of 'pure' law, matters the [appellate court] 'can decide quickly and cleanly without having to study the record.'" *Id.* (quoting *Ahrenholz*, 219 F.3d at 677.) In other words, "the legal question must be stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law." *Id.* at 1259.

The appellate court also must consider whether "there is substantial dispute about the correctness of any of the pure law premises the [lower] court actually applied in its reasoning leading to the order sought to be appealed." *Id.* at 1259. The legislative history for § 1292(b) indicates that a "mere question as to the correctness of the ruling" is not sufficient to warrant interlocutory review. *See Id.* at 1256 (quoting Judicial Conference Committee report presented to United States House of Representatives and Senate Judiciary Committees); *see also Flint Riverkeeper, Inc. v. S. Mills, Inc.*, 261 F. Supp. 3d 1345, 1347 (M.D. Ga. 2017) (Royal, J.) ("Neither the mere lack of authority on the issue nor the claim that the district court's ruling is incorrect constitutes a substantial ground for difference of opinion.") (quoting *U.S., ex rel. Powell v. Am. InterContinental Univ., Inc.*, 756 F. Supp. 2d 1374, 1379 (N.D. Ga. 2010) (Story, J.)); *In re Frascella Enterprises, Inc.*, 388 B.R. at 623-25 ("'Mere disagreement with the court's determination does not create a 'substantial grounds for difference of opinion.' ... The grounds for a difference of opinion must arise out of genuine doubt as to the correct legal standard.'") (quoting *Truong v. Kartzman*, 2007 WL 1816048, at *3 (D. N.J. June 22, 2007) (Brown, J.) (other citations omitted)); *KPMG Peat Marwick, L.L.P. v. Est. of Nelco, Ltd., Inc.*, 250 B.R. 74, 83 (E.D. Va. 2000) (Spencer, J.) ("[I]t matters not whether the lower court simply got the law wrong (at least in the opinion of the appealing party); such a mistake could presumably be corrected on appeal after the lower court issues its final ruling. What matters is whether courts themselves disagree as to what the law is."). In

8

other words discretionary interlocutory review is reserved for those cases in which the parties "earnestly dispute the law, not simply the result." *KPMG Peat Marwick*, 250 B.R. at 79.

Finally, the answer to the question raised "must substantially reduce the amount of litigation left in the case." *McFarlin*, 381 F.3d at 1259. This requires that "resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *Id.* When an interlocutory appeal does not raise a dispositive legal question, courts routinely decline to exercise interlocutory review. *See, e.g., In re Allied Holdings, Inc.*, 376 B.R. 351, 363 (N.D. Ga. 2007) (Duffey, J.).

Ultimately, "[b]ecause permitting piecemeal appeals is bad policy, permitting liberal use of § 1292(b) interlocutory appeals is bad policy." *Id.* Applying the foregoing standards, the court concludes that GCube and Kiln are unlikely to prevail on the Motion for Interlocutory Appeal.

(1) <u>There is no controlling question of law as to which there is a substantial ground for difference of opinion</u>.

Although the Motion for Interlocutory Appeal lists five "questions" on appeal, as discussed above, each is premised on the assertion that this court's contract interpretation analyses were flawed. Specifically, and without explanation or analysis, the movants contend (a) that the court must apply New York law when construing the effect the Service of Suit Clauses in the Certificate, (b) that under "well settled" New York law a service of suit clause merely operates as a consent to personal jurisdiction, and (c) that construing the Service of Suit Clauses as consents to personal jurisdiction forecloses a determination that the Service of Suit Clauses and Jurisdiction Clause conflict. (*See* Motion for Interlocutory Appeal, *passim*.)

As a preliminary matter, it warrants discussion that the two cases cited by the movants—*Brooke Group Ltd. v. JCH Syndicate 488*, 87 N.Y.2d 530 (1996), a New York court of appeals case, and *Dornoch Ltd. v. PBM Holdings, Inc.*, 666 F. Supp. 2d 366 (S.D.N.Y. 2009) (Rakoff, J.), a federal district court case applying *Brooke Group*—do not stand for the general proposition that service of suit clauses are merely treated as consents to personal jurisdiction under New York law. Both cases are discussed at length in the Venue Opinion. (*See* Venue Opinion at 13-15, 20.) As set out in the Venue Opinion, each court was tasked with reconciling a service of suit provision with a seemingly conflicting provision in the parties' agreement—in *Brooke Group*, it was an arbitration provision, and in *Dornoch* it was a venue provision (both of which differ materially from the Jurisdiction Clause). *Id.* Also, in each case, the procedural posture differed from that of this AP—in *Brooke Group* the insurer moved to dismiss to compel arbitration (not litigation in another judicial forum) and *Dornoch* involved a motion to dismiss an insurer's second filed, declaratory judgment action filed in the forum mandated by the "venue" provision (not a motion to dismiss the insured's first filed suit in a different forum under the service of suit clause). *Id.* As such, these decisions entailed fact specific applications of New York law, and this court's application of the courts' holdings to the instant case (as noted above, the court assumed New York law applied for purposes of its analysis) also was a fact specific inquiry. *Id.*

9

The movants' appear to conflate the *Brooke Group* and *Dornoch* courts' characterizations of the subject service of suit clauses as "consents to jurisdiction" with a pronouncement that, as a matter of New York common law, a service of suit clause merely operates as a consent to *personal* jurisdiction. This conclusion is tempting. Certainly, "in many jurisdictions it is difficult to distinguish the outer perimeter of venue and in personam jurisdiction." *Eli Lilly and Co. v. Home Ins. Co.*, 794 F.2d 710, 718 (D.C. Cir. 1986) (footnote omitted). Ultimately, though, an examination of the cited cases (and other cases analyzing New York law regarding "consents to jurisdiction") reveals that the "jurisdictional" consent referred to in these cases has both personal and territorial reach. (*See* Venue Opinion at 13-16, 20.)

First, in *Brooke Group* the New York Court of Appeals specifically stated that it *gave* effect to the subject service of suit clause in its state law *forum non conveniens* analysis and dismissed on grounds "unrelated to New York," the plaintiff's chosen forum. *Brooke Group*, 87 N.Y.2d at 535.[20]

Second, the *Brooke Group* court distinguished the service of suit clause from a *mandatory* forum selection clause, finding instead that it was "permissive"—implying that the court treated the subject service of suit clause as a permissive forum provision (and not merely a consent to personal jurisdiction). *Brooke Group*, 87 N.Y.2d at 534-35.[21]

Third, neither the word "personal" nor the word "personam" appears at all in either decision. *Brooke Group*, 87 N.Y.2d 530, *passim*; *Dornoch*, 666 F. Supp. 2d 366, *passim*.[22]

Fourth, under New York law, a "mandatory consent to jurisdiction…guarantees to one party the right to bring cases in the *forum* of its choice." *See Signature Fin. LLC v. Neighbors Global Holdings, LLC*, 281 F. Supp. 3d 438, 447 (S.D.N.Y. 2017) (Rakoff, J.) (citations omitted) (emphasis added). In its discussion of New York law, the federal district court in *Signature Financial* cites *Brooke Group* for the proposition that the New York courts will not *enforce* broad, mandatory consents to jurisdiction. *Id.* at 446-48. There is no dispute that enforcement of the Jurisdiction Clause and Service of Suit Clauses is governed by federal law in the AP. (*See* Venue Opinion at 14.) Further, the Service of Suit Clauses are much narrower in scope than the service of suit clause at issue in *Brooke Group*. (*See* Venue Opinion at 13-14.)

Fifth, although the *Dornoch* court concluded that "the [subject] Service of Suit Clause 'is not a 'choice of forum' provision,' and does not 'prescribe the forum for the action,'" the court did not provide citations for these conclusions. 666 F. Supp. at 370. Significantly, the quoted text does not appear in the *Brooke Group* decision nor any other published New York state court decision. *See Brooke Group, passim*. The origin of the first quote appears to be *Merrill Lynch, Pierce, Fenner & Smith, Inc. v.*

---

[20] (*See also* Venue Opinion at 13-15.)
[21] (*See also* Venue Opinion at 13-15.)
[22] (*See also* Venue Opinion at 13.)

*Shaddock*, 822 F. Supp. 125, 128 (S.D.N.Y. 1993) (Connor, J.), a federal district court case discussing an arbitration provision, and the second quote appears to originate in *Ace Capital v. Varadam Foundation*, 392 F. Supp. 2d 671, 675 (D. Del. 2005) (Robinson, J.), a federal district court case relying on Fifth Circuit precedent to conclude that a service of suit clause "speaks only to actions brought by the insured" and has no application when "the action is first instituted by the insurer." *Id.* In *Ace Capital*, the court was seeking to distinguish Third Circuit precedent that a service of suit clause operates as a waiver of a right of removal. *Id.* The *Ace Capital* court *did not* conclude that a service suit provision has no territorial effect and, in fact, expressly recognized that a service of suit clause does impact the appropriate forum for litigation—depending on the litigation's procedural posture. *Id.* Thus, to the extent GCube and Kiln rely on the above-referenced holding from the *Dornoch* decision as an authoritative statement of New York law, their reliance is misplaced.

Moreover, to the extent the appropriate characterization of service of suit clauses under New York law can be characterized as a "purely" legal question for which there is a substantial grounds for difference of position,[23] it is not a dispositive question. Even if the District Court were to agree with the movants and hold that (a) the Service of Suit Clauses merely operate as consents to personal jurisdiction under New York law and (b) that New York law (not federal law) governs the construction of such provisions (*see* Venue Opinion, n. 23), such holdings would necessitate a further, fact specific, contract interpretation analysis to evaluate whether this distinction is relevant. Considering the well settled principals of contract interpretation set forth in the Venue Opinion (*see* Venue Opinion at 18-22), this court is not persuaded that treating the Service of Suit Clauses as "consents to personal jurisdiction" impacts this court's contract interpretation analysis in any meaningful way.[24] Regardless

---

[23] Although not clear from the Motion for Interlocutory Appeal, on the record of the Stay Hearing counsel for the movants suggested that *Dornoch* evidences there is a "substantial ground for difference of opinion" on the issue of whether a service of suit clause merely operates as a consent to personal jurisdiction. For the reasons set forth above, this court disagrees.

[24] Adding the qualifier "personal" into the Service of Suit Clauses, causes them to read, in relevant part, "[A]t the request of [Veros], [the Underwriters] will submit to the [personal] jurisdiction of a Court of competent jurisdiction within the United States…[and] in any suit instituted against any one of them upon this contract, [the] Underwriters will abide by the final decision of such Court." (*See* Venue Opinion at 6.) The Underwriters posit that, when read this way, the Service of Suit Clauses do not conflict with the Jurisdiction Clause, which states that "[a]ny disputes between [Veros] and [the] Underwriters arising under or in connection with this Insurance policy shall be subject to the exclusive jurisdiction of the [New York state courts]." (*Id.*) It appears to the court that the Underwriters reconcile the provisions by equating a "Court of competent jurisdiction" with a New York state court or otherwise treating the Jurisdiction Clause as trumping the Service of Suit Clauses. This reconciliation renders the Service of Suit Clauses (and the Underwriters' reservations, therein, of their rights to remove suits filed by Veros, to transfer suits filed by Veros, and to commence separate suit against Veros in another forum) mere surplusage. What is the effect of consenting to personal jurisdiction in a forum if litigation cannot be commenced there—not because of a statutory venue provision proscribing a different forum for the litigation but because of the very contract that grants the court personal jurisdiction? Notably, even in federal court, the effect of a consent to a court's exercise of personal jurisdiction can be to make venue statutorily proper in that court. *See Palmer v. Braun*, 376 F.3d 1254, 1260 (11th Cir. 2004); *see also* 28 U.S.C. § 1391(b)(3). Basic rules of contract interpretation—under federal law and New York law—require courts to avoid reconciliations that leave contract provisions without meaning. (*See* Venue Opinion at 18-19.) Here, if the intent of the Service of Suit clauses was solely for the Underwriters to consent to personal jurisdiction in the state courts of New York, the Certificate could easily have said as much. Without admitting to any ambiguity, the Underwriters offer a means of reconciling the conflicting "jurisdiction" provisions in the agreement. This court has adopted an alternate, reasonable reconciliation that gives at least some effect to the Service of Suit clauses

of this court's view of the substantive merits of the appeal, however, "the antithesis of a proper § 1292(b) appeal is one that turns on…whether the [lower] court properly applied settled law to the facts or evidence of a particular case." *McFarlin*, 381 F.3d at 1259.

At oral argument on the Motion for Stay, counsel for GCube and Kiln argued that a determination as to how and to what extent a contract's inclusion of multiple forum selection clauses alters the truncated *Atlantic Marine* analysis is a pure question of law that has general relevance to other cases. However, the asserted basis for the Motion for Interlocutory Appeal is that there is a single forum selection clause. The motion does not ask the District Court to decide how the *Atlantic Marine* analysis is altered when a contract has multiple forum selection clauses. Further, this court acknowledged that federal courts have taken different analytical approaches to the *forum non conveniens* analysis when a contract contains multiple, competing forum selection clauses, and thus undertook an alternative contract interpretation analysis, under which the court concluded dismissal was not appropriate based on the terms of the Certificate (the movants' real point of contention).

GCube and Kiln's counsel also argued on the record of the Stay Hearing that, if the District Court adopts their alternative reconciliation of the "jurisdiction" clauses in the Certificate, such a holding will necessitate a determination as to whether, under the truncated, *Atlantic Marine forum non conveniens* analysis, the public interest factors cited by this court are sufficient to deny the relief requested in the Venue Motion. This, counsel argues, is the type of "controlling legal issue" that is ripe for interlocutory review.[25] This court is not persuaded that the District Court is likely to grant the Motion for Interlocutory Appeal merely because a reversal on appeal of this court's contract construction/reconciliation determinations, for which interlocutory review is not appropriate, could potentially[26] raise a legal issue that might appropriately be reviewed on an interlocutory basis.

The court is not unsympathetic to the movants' complaint that the court's construction and reconciliation of the "jurisdiction" clauses are erroneous. Earlier in the litigation, the court stated on the record a tentative ruling that differed from the Venue Opinion. Veros requested an opportunity to brief certain issues that the court's tentative ruling did not consider, and, without objection, Veros was allowed to file a supplemental brief. (*See* AP Doc. 65; AP Doc. 68.) GCube and Kiln were given an opportunity to respond, which they did. (*See* AP Doc. 65; AP Doc. 69.) All parties were given the right to request further oral argument after the briefing concluded (no party made such a request). (*See* AP Doc. 65; AP Docket, *passim*.) The movants now argue that the court's decision was a "close

---

and is more favorable to the insured (Veros), as well settled principles of contract interpretation compel. Commencement of a separate suit in New York state court is not foreclosed by this court's contract interpretation analysis.

[25] GCube and Kiln appear to presuppose that this court would deny the Venue Motion on public interest grounds even if the Jurisdiction Clause applies to the Claims in their present procedural posture, without exception, and the Service of Suit Clauses do not permit Veros to bring suit in Alabama. This supposition is not supported by the Venue Opinion. The court's construction and reconciliation of the three "jurisdiction" clauses in the Certificate precluded application of the abbreviated, *Atlantic Marine* analysis. Thus, the court did not reach this issue.

[26] This analysis will not be needed if it is determined that the Jurisdiction Clause is unenforceable.

12

call" and, therefore, that they are entitled to interlocutory review. Of course, this court is of the view that the tentative ruling was incorrect, not the Venue Opinion (or the undersigned would not have reconsidered her tentative ruling). Moreover, perhaps recognizing that the court's tentative ruling was flawed, the movants do not now seek to invoke that tentative ruling (which assumed that the Service of Suit Clauses were at least permissive forum provisions for purposes of the court's analysis).[27] Regardless, as discussed above, the mere fact GCube and Kiln disagree with this court's fact-specific construction and reconciliation of the "jurisdiction" clauses in the Certificate is not a basis for interlocutory relief—particularly since the disagreement stems from the assertion that this court misinterpreted or misapplied two cases that do not stand for the proposition for which they are cited by the movants.

> (2) <u>The questions presented in the Motion for Interlocutory Appeal are not dispositive, and their resolution will not materially advance the litigation</u>.

In their Motion, GCube and Kiln aver that resolving the questions presented in their Motion for Interlocutory Appeal will entitle them to entry of an order granting the Venue Motion—ending litigation in Alabama. This is incorrect. Even if all of the questions set forth in the Motion for Interlocutory Appeal are resolved in the movants' favor—the Service of Suit Clauses are merely consents to personal jurisdiction under New York law; New York law, not federal law, governs whether the Service of Suit Clauses are or are not to be construed as forum selection clauses; the Service of Suit Clauses do not conflict with the Jurisdiction Clause, and, therefore, the Certificate includes a single, valid forum selection clause that must be given near determinative weight in the truncated *forum non conveniens* analysis under *Atlantic Marine*; and under the truncated *Atlantic Marine* analysis, the public interest factors considered by the court as part of its modified *Atlantic Marine* analysis do not give rise to the type of unusual circumstances that warrant denial of a the Venue Motion—there are other issues that must be decided (by the District Court or this court) before

---

[27] (*See* AP Doc. 100, *passim*.) There are a number of reasons the undersigned reconsidered her tentative ruling. Among other things, the court's tentative ruling incorrectly relied on the fact that a party cannot waive a right to dismiss for *forum non conveniens* based on *public interest* factors to "bootstrap" a contractual right to dismiss on *private interest* grounds (i.e., the Jurisdiction Clause) into the Service of Suit Clauses. This was Veros's primary challenge to the court's tentative ruling. (*See* AP Doc. 68, *passim*.) The court's tentative ruling also failed to take into account Eleventh Circuit precedent regarding the enforceability of permissive forum provisions when litigation is commenced *in* the permitted forum (as distinguished from cases where a party seeks to compel transfer *to* a permitted forum). (*See* Venue Opinion at 14-16.) Effectively, the court's tentative ruling treated the "jurisdiction" clauses as if they were located in separate contracts and concluded that that a provision that permits litigation in a forum but does not foreclose litigation in a different forum cannot trump a forum selection clause that mandates litigation in a forum (or fora). However, this analysis does not hold up when one recognizes that the "jurisdiction" clauses appear in the same agreement and that there is a single action pending in a permitted forum. In other words, this is not a case where litigation was commenced in a mandatory forum under one contract and the party seeking dismissal seeks to compel litigation in a permitted forum under another. Because the Service of Suit Clauses (considered in isolation) permit litigation in this forum and operate to waive the Underwriters' jurisdictional challenges to this forum, the court could not (and cannot) avoid the conclusion that the Jurisdiction Clause (which purports to mandate litigation in a New York state court) conflicts with the Service of Suit Clauses. In their Motion for Interlocutory Appeal the movants continue to deny that any such conflict exists. They do not offer any analysis or explanation as to why, if there is a conflict, the provisions should be reconciled in their favor. (*See* Motion for Interlocutory Appeal, *passim*.) Finally, the court's tentative ruling failed to properly account for the public interests and bankruptcy-derivative rights of other interested parties (such as the Committee) affected by the AP. (*See* Venue Opinion at 3-4, 17.)

13

GCube and Kiln are entitled to prevail on the Venue Motion. Without limitation, and as previously noted, this court did not reach Veros's argument that the Jurisdiction Clause is unenforceable as a matter of federal public policy. Also, this court did not reach the issue of whether confirmation of the Plan enjoins or otherwise restricts enforcement of the Jurisdiction Clause. Because the questions presented in the Motion for Interlocutory Appeal, even if resolved entirely in GCube and Kiln's favor, would necessitate further proceedings on the Venue Motion (in this court or the District Court), the court fails to see how the interlocutory appeal would materially advance the termination of the litigation.

It also is notable that GCube and Kiln appear to maintain their request to transfer venue of this litigation to another federal district court not selected by the parties' agreement. Specifically, the relief requested in the Motion for Interlocutory Appeal is an order dismissing the AP or, alternatively "transfer[ing] the [AP] to the Courts of the State of New York." (Motion for Interlocutory Appeal at 7.) As there is no procedural mechanism for transferring the AP to a New York state court (the forum specified by the Jurisdiction Clause), this court construes the transfer request as a request to transfer to the SDNY. Transfer, unlike dismissal, would not end the litigation in federal court.

Recognizing that granting interlocutory review is within the discretion of the District Court—and also that there is a pending Motion to Withdraw which, if granted, would make the District Court the trial court in the AP—the court will proceed to consider whether the movants have otherwise established that they are entitled to a stay.

**B.    Irreparable Harm to the Movants**

The harm articulated by GCube and Kiln is that, if a stay a stay does not issue, they "could effectively be forced to proceed with litigation in an inappropriate forum." (*See* Motion to Stay at 10.) On the record of the Stay Hearing, counsel for GCube and Kiln acknowledged that, given the Bankruptcy Rule 5011 stay that is in effect in the AP, the only presently threatened harm is proceeding with discovery in the AP. GCube and Kiln offered no evidence to show that they would be harmed by proceeding with discovery in this forum and cited no legal authority for the proposition that proceeding with discovery pending an interlocutory appeal of the court's Venue Order constitutes irreparable harm. Many courts have held otherwise. *See, e.g.*, *U.S. v. Stein*, 452 F. Supp. 2d 281, 283 (S.D.N.Y. 2006) (Kaplan, J.) (finding no irreparable injury where movant would "be compelled to participate in pretrial discovery" pending appeal of motion to compel arbitration and holding that "any depositions or other discovery taken here during the pendency of the appeal could be used in any arbitrations that eventually might take place"); *Briggins v. Elwood Tri, Inc.*, 2013 WL 452766, at *2 (N.D. Ala. Feb. 1, 2013) (Bowdre, J.) (holding that "[e]ven when litigation expense is 'substantial and unrecoupable,' it does not constitute irreparable injury"); *In re Perry H. Koplik & Sons, Inc.*, 2007 WL 781905, at *2 (Bankr. S.D.N.Y. Mar. 13, 2007) (Gerber, J.) (holding the movant's "desire to avoid discovery, produce documents, and provide witnesses is not 'imminent' irreparable harm" as "[t]here is no irreparable injury in defending a lawsuit and complying with the requirements of discovery" and

14

stating "[t]he notion that defending a lawsuit amounts to 'irreparable injury' strikes this Court as absurd"). Regardless of where the Claims will be tried, discovery must be had. In fact, discovery might obviate the need for further protracted litigation over the appropriate forum for the litigation, as the parties may be in a better posture to evaluate settlement after conducting some discovery. Counsel for the parties acknowledged as much on the records of prior hearings in the AP.

Because the present stay of the AP pursuant to Bankruptcy Rule 5011 ensures that there is no immediate risk to the movants that they will be required to try the AP before the motions pending before the District Court are decided, the movants have not "demonstrated a substantial threat of an irreparable injury that would warrant granting at this time the extraordinary remedy of an injunction pending appeal." *Touchston v. McDermott*, 234 F.3d 1130, 1133 (11th Cir. 2000). As this denial is without prejudice, if the District Court grants the Motion for Interlocutory Appeal but denies the Motion to Withdraw (thus obviating the need for a Bankruptcy Rule 5011 stay), the movants will not be precluded from seeking a Bankruptcy Rule 8007(a) stay at such time.[28]

### C.   Harm to Other Interested Parties

As the Venue Opinion sets out, the Claims are property of the Estate and any recovery thereon will impact distributions to creditors under the Plan. (*See* Venue Opinion at 3-4.) Staying discovery while the parties continue to fight over the appropriate forum for the trial of the Claims may further delay trial, delay any judgment that might be due to issue on the Claims, delay distribution of any recovery thereon to the Estate's creditors, deprive the Committee of the ability to oversee discovery in the AP, and potentially increase the Estate's litigation costs. Additionally, there is the potential for loss of evidence and the unavailability of witnesses if discovery is stayed at this state of the litigation. As such, the potential harm to the Estate and its creditors that would result from staying discovery outweighs any conceivable "harm" to the movants from proceeding with discovery while the parties litigate over the appropriate forum for the trial of the Claims. *See In re Enron Corp.*, 2006 WL 2400411, at *4.

### D.   Public Interest

The sole public interest factor cited in the Motion for Stay is federal policy favoring the enforcement of forum selection clauses. (*See* Motion for Stay at 12-13.) "A policy favoring enforcement of forum-selection clauses, however, would go to the merits of [the movants'] claim that

---

[28] The court does not hereby reach the issue of whether, if the Motion to Withdraw is denied but the Motion for Interlocutory Appeal is granted, the movants would be irreparably harmed by proceeding with dispositive motions or trial of the AP before this court. It bears mention that the Underwriters have never sought relief from stay to file their own suit in New York state court—despite the court inquiring about this on the record of the Evidentiary Hearing on the Venue Motion. The Underwriters also did not oppose confirmation of the Plan—which might enjoin the Underwriters from commencing litigation against Veros (*see* Venue Opinion at 3, n. 38)—notwithstanding the fact that GCube received notice of the Plan and had an opportunity to object. As such, any harm that may inure to the Underwriters through litigating in this forum might very well be a consequence of their own inaction.

15

[the Certificate] requires that any suit be filed in [New York] and that the agreement should be enforced by the federal courts." *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 501 (1989). In the Venue Opinion, the court determined that the Certificate includes multiple forum provisions—two of which Veros seeks to enforce in this AP. As such, to the extent that enforcement of a private, contractual right can be said to serve the "public interest," such interest weighs against a stay as much as it does in favor of a stay. Ultimately, a number of true "public interests" are implicated by the Venue Motion, but all such public interest factors weigh against dismissal or transfer of this AP and likewise weigh against a stay of litigation in this forum. (*See* Venue Opinion at 3-4, 16-17.)

## CONCLUSION

For the foregoing reasons, the Motion for Stay is due to be and is hereby **DENIED**.

**DONE** and **ORDERED** this the 1st day of June, 2018.

/s/ Jennifer H. Henderson
United States Bankruptcy Judge